UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN WALKING EAGLE, | ) | CIV. 11-5016-KES |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## INTRODUCTION

Having been sentenced to 240 months imprisonment, petitioner Kevin

Walking Eagle now seeks habeas relief pursuant to 28 U.S.C. § 2255.  The

district court, the Honorable Chief United States District Judge

Karen E. Schreier, referred this matter to this magistrate judge for a

recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  The United

States of America (government) has moved for dismissal of Mr. Walking Eagle's

petition without benefit of an evidentiary hearing.  See Docket No. 29.[1]  Below

is the court's recommendation on these matters.

## FACTS

The facts which are relevant to resolving the pending motion are as

follows.

---

[1] Also pending are objections by Mr. Walking Eagle to this court's prior order of July 15, 2011, found at Docket No. 25 in this case.  This court does not resolve those objections as they are directed to the district court.

## A.    Pretrial Facts

Mr. Walking Eagle was first arrested on October 16, 2008.  Mr. Walking Eagle was initially charged only with conspiracy to distribute controlled substances, possession with intent to distribute a controlled substance, and distribution of a controlled substance.   See United States v. Walking Eagle, CR. 5:08-cr-50100-01-KES, Docket No. 1 (D.S.D.).  However, law enforcement monitored and recorded telephone calls that Mr. Walking Eagle made from the jail after his initial appearance.  These phone calls appeared to be attempts by Mr. Walking Eagle to continue his participation in the drug conspiracy from his location at the jail.[2]  A superseding indictment was issued approximately three months later that charged Mr. Walking Eagle with conspiracy to distribute cocaine and marijuana, possession with intent to distribute cocaine, distribution of cocaine, and engaging in a continuing criminal enterprise.  Id. at Docket No. 83.

Mr. Walking Eagle was given court-appointed counsel, Mr. Robert Van Norman, at his initial appearance the next day after his arrest.  Id. at Docket No. 15.  Mr. Van Norman immediately moved the court for the appointment of a

---

[2] The recordings of these phone calls were introduced as evidence in one of the many bail review hearings requested by Mr. Walking Eagle.  They are filed under seal in CR. 08-50100-01, Docket No. 130, and were reviewed by this court when ruling on the Motion for Reconsideration found at Docket No. 129.

paralegal and a private investigator to assist him in representing Mr. Walking Eagle.  Those motions were granted.  Id. at Docket No. 35.

Slightly over a month later, Mr. Walking Eagle then privately retained attorney Terry Pechota, who made his appearance on Mr. Walking Eagle's behalf on November 24, 2008, terminating Mr. Van Norman's representation. Id. at Docket No. 68.  Some nine months later, Mr. Pechota's status as a privately-retained lawyer was converted to that of a court-appointed lawyer. See id. at Docket No. 293 (Sept. 15, 2009).

On April 2, 2009, Mr. Pechota filed a motion to suppress evidence on behalf of Mr. Walking Eagle.  Id. at Docket No. 149.  In the motion, Mr. Pechota sought to suppress the fruits of two search warrants, the contents seized from a motor vehicle, the results of a drug dog alert to that motor vehicle, and the previously-mentioned telephone calls made by Mr. Walking Eagle from the jail that had been recorded without benefit of a court order.  Id.  As to the search warrants, Mr. Pechota argued that:  (1) the search warrants lacked probable cause; (2) the information from confidential informants was not reliable and could not support probable cause; (3) the information presented in the affidavit in support of the request for the search warrant was stale; and (4) the affiant who obtained the search warrants had included false statements or omitted material information, either intentionally or with reckless disregard, from his affidavit.  Id.

3

An evidentiary hearing was held on Mr. Pechota's motion to suppress on September 9, 2009, before this magistrate judge.  Mr. Walking Eagle was present for the hearing, along with Mr. Pechota.  The day after the hearing, a report and recommendation was filed recommending denial of the motion to suppress in all respects.  Id. at Docket No. 189.  The magistrate judge concluded that Mr. Pechota had made a sufficient preliminary showing to allow him to probe the credibility of the search warrant affiant pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  Id.  Mr. Pechota was allowed to cross-examine the affiant about the veracity of the statements made in the affidavit in support of the search warrant and to question whether there were any material misrepresentations or omissions of fact from that affidavit.  Id.  The court ultimately rejected Mr. Pechota's Franks argument.  Id.

Mr. Pechota then timely objected to the magistrate judge's report and recommendation.  Id. at Docket No. 199.  Mr. Pechota objected to the magistrate judge's conclusions about the admissibility of Mr. Walking Eagle's jail phone calls, the fruits of the search warrant executed on his home, and the search of the motor vehicle.  Id.  In objecting to the magistrate judge's recommendation as to the search warrants, Mr. Pechota renewed his Franks arguments, asserting that the affidavits contained false statements or material omissions.  Id.  Mr. Pechota specifically argued that the statements in the

4

affidavits tying Mr. Walking Eagle to gang activity were false and without any factual support.  Id.

While the objections to the recommended disposition of the suppression motion were pending, Mr. Pechota filed a number of other motions on Mr. Walking Eagle's behalf.  Among those were a motion to dismiss the indictment, a motion to sever Mr. Walking Eagle's trial from that of his co-defendants, a motion to compel the government to reveal the identities of its sources of information and confidential informants, a motion for a change of venue, and a motion to dismiss the indictment for want of jurisdiction.  Id. at Docket Nos. 224, 225, 227, and 228.  Among the arguments posited in support of the motion to dismiss the indictment was an argument that the crime of continuing criminal enterprise in count III of the indictment violated Mr. Walking Eagle's due process rights because it was too vague and did not allow persons to determine what conduct was made unlawful by the statute. Id. at 227.

**B.  The Plea**

The presiding district court, the Honorable Karen E. Schreier, Chief United States District Judge, never ruled on any of these pending motions or on Mr. Pechota's objections to the magistrate judge's recommendation on the suppression motion because Mr. Walking Eagle pleaded guilty before the court could resolve those matters.  The written plea agreement and statement of

factual basis signed by Mr. Walking Eagle was filed November 17, 2009, followed up by an oral change of plea at a hearing before the district court the next day.  Id. at Docket Nos. 238, 240, 242, and 248.  After Mr. Walking Eagle pleaded guilty, the sentencing hearing was scheduled for some three and one-half months in the future, on March 1, 2010.  Id. at Docket No. 249.

The written plea agreement indicated that Mr. Walking Eagle would be pleading guilty to count III of the superseding indictment which charged that Mr. Walking Eagle had committed the crime of knowingly and intentionally engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) and (c).  See Docket Nos. 83 and 238.  The indictment charged that Mr. Walking Eagle had violated 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to distribute controlled substances, and that he engaged in a continuing series of violations of these drug laws.  Id. at Docket No. 83.  The indictment alleged that Mr. Walking Eagle had done so from no later than 1999 continuing up through the December 16, 2008, date of the indictment.  Id.

The statement of factual basis, signed by Mr. Walking Eagle, Mr. Pechota, and the prosecutor, stipulated that in 1998, Mr. Walking Eagle was introduced to drug suppliers in Denver, Colorado, by a man named Joe Valdez.  Id. at 240.  After the introduction, Mr. Walking Eagle began purchasing cocaine from these Denver suppliers and distributing the cocaine on the Pine Ridge Indian Reservation in the District of South Dakota.  Id.  He

6

began doing so at quantities of approximately one-quarter of a pound of cocaine, but by 2008, was purchasing three-quarters of a pound at a time.  Id. The statement stipulated that Mr. Walking Eagle rarely transported the cocaine himself, but would have others take care of that task.  Id.

The statement stipulated that Mr. Walking Eagle and others recruited couriers to work for him.  Id.  Once the details of a purchase were worked out, Mr. Walking Eagle or his brother would provide a vehicle and the contact information to the couriers.  Id.  Mr. Walking Eagle was exclusively responsible for providing the money for these drug purchases and his brother was exclusively responsible for negotiating the terms of the purchase.  Id.

When the cocaine arrived, Mr. Walking Eagle paid his brother, usually with cocaine.  Id.  He would then work with others to break the bulk drugs down into .4-gram packets which were subsequently then sold as "half grams." Id.  Mr. Walking Eagle would then apportion the packets in bundles of twenty to trusted dealers.  Id.  Mr. Walking Eagle's brother took care of paying the couriers.  Id.

Under the terms of the written plea agreement, Mr. Walking Eagle waived his right to appeal except for two circumstances: (1) if the district court departed upwards in sentencing him or (2) if there were issues as to the district court's jurisdiction.  Id. at 238.  Mr. Walking Eagle also waived all defenses. Id.  The written plea agreement stated that the crime of continuing criminal

enterprise carried a mandatory minimum sentence of 20 years imprisonment (240 months), and a maximum sentence of life imprisonment.  Id.

At the change of plea hearing, Mr. Walking Eagle was placed under oath. See CR 08-50100-01, Docket No. 309, page 2.  All testimony which he gave at that hearing was subject to prosecution for perjury.  Id.

Mr. Walking Eagle stated that he had gone to school through the eleventh grade and had obtained his general equivalency diploma.  Id. at 3.  He stated that he had not been recently treated for mental illness or for drug or alcohol abuse.  Id.  Aside from his high blood pressure medicine, he denied having ingested any drug, medication or alcohol.  Id.  He stated that his high blood pressure medication did not interfere with his ability to understand what was happening at the hearing.  Id.

Mr. Walking Eagle told the court that he had received a copy of the superseding indictment, had read it, and had discussed it with Mr. Pechota. Id. at 4.  Mr. Walking Eagle told the court that he was fully satisfied with the advice and representation that Mr. Pechota had given him.  Id.

Mr. Walking Eagle also stated that he had read the written plea agreement and had discussed it with Mr. Pechota.  He asserted that the terms contained in the written plea agreement represented–in their entirety–all of the understanding that he had with the government.  Id.  He specifically denied that any promises or assurances had been made to him that were not

8

contained in the written plea agreement.  Id. at 4-5.  Mr. Walking Eagle told the court that no one had threatened him or coerced him to get him to accept the plea agreement.  Id. at 5.  Mr. Walking Eagle testified that he was pleading guilty of his own free will because he was guilty.  Id.

With regard to the charge of continuing criminal enterprise, the court advised Mr. Walking Eagle that the minimum term of incarceration for that offense was 20 years imprisonment and that the maximum term of incarceration was life in prison.  Id. at 6.  Mr. Walking Eagle stated that he understood those penalties.  Id. at 7.

Mr. Walking Eagle told the court that he understood that, by pleading guilty, he was giving up his right to appeal according to the agreement he had signed.  Id. at 8.  Mr. Walking Eagle said he understood that the only exceptions to this appeal waiver were to raise jurisdictional questions or to challenge an upward departure if the court adopted one at sentencing.  Id. at 8-9.

The court advised Mr. Walking Eagle that, if he pleaded guilty, he would give up his right to a jury trial, his right to be presumed innocent, his right to make the government prove the charges against him beyond a reasonable doubt, the right to confront and cross-examine witnesses, his right to put on evidence on his own behalf, and his right to remain silent.  Id. at 9-10.

Mr. Walking Eagle told the court he understood what he would be waiving if he

pleaded guilty.  Id. at 10.

The court advised Mr. Walking Eagle of the elements of the offense of

continuing criminal enterprise that the government would have to prove if

Mr. Walking Eagle went to trial:

> that from 1999 through the date of the indictment, at Pine Ridge,
> in the District of South Dakota, and elsewhere, [he] committed the
> offense of conspiracy to distribute or to possess with intent to
> distribute a controlled substance, distribution of a controlled
> substance, or possession with intent to distribute a controlled
> substance; that the offense was part of a continuing series of three
> or more related felony violations of the federal controlled substance
> laws; that such offenses were undertaken in concert with five or
> more other persons; that [he] acted as an organizer, supervisor, or
> manager of those five or more other persons; and that [he]
> obtained a substantial amount of money or other property from the
> series of violations.

Id. at 10-11.  Mr. Walking Eagle told the court that he understood that the

government would have to prove these elements if he went to trial.  Id. at 11.

The court then asked Mr. Walking Eagle if he had read the statement of

factual basis before he signed it.  Id.  Mr. Walking Eagle stated that he had.  Id.

He further told the court that everything in the statement of factual basis was

the truth.  Id.  Mr. Walking Eagle then entered a plea of guilty to the charge of

continuing criminal enterprise.  Id.

The court made a finding that Mr. Walking Eagle was fully competent

and capable of entering an informed plea.  Id.  The court found that

Mr. Walking Eagle was aware of the nature of the charges and the

10

consequences of the plea.  Id.  The court also found that Mr. Walking Eagle's plea of guilty was knowing and voluntary and was supported by an independent basis in fact that contained each of the essential elements of the offense.  Id. at 11-12.  Mr. Walking Eagle's plea of guilty was accepted.  Id. at 12.

## C.    Post-Plea Facts

Five days after entering his plea of guilty pursuant to the plea agreement, Mr. Pechota filed a motion seeking Mr. Walking Eagle's release pending sentencing.  Id. at Docket No. 258.   The district court denied the post-plea motion for release of Mr. Walking Eagle.  Id. at Docket No. 259.  Mr. Pechota filed an appeal of the district court's denial of his post-plea motion for release to the Eighth Circuit Court of Appeals.  Id. at Docket No. 260.  The Eighth Circuit denied the appeal approximately six weeks after the notice of appeal was filed.  Id. at Docket No. 265.

Eight days later, Mr. Walking Eagle filed a *pro se* motion with the court asking the court to remove Mr. Pechota and appoint new counsel for his sentencing.  Id. at Docket No. 267.  In his *ex parte* communication with the court, Mr. Walking Eagle never asked to be allowed to withdraw his plea of guilty.  Id.  Mr. Walking Eagle specifically requested that the court appoint Ms. Monica Colbath to represent him.  Id.  The court granted Mr. Walking

11

Eagle's motion, in which Mr. Pechota concurred, and appointed Ms. Colbath to represent him.  Id. at Docket Nos. 269, 270.

After the presentence investigation was conducted, a presentence investigation report (PSI) was given to both the government and to Mr. Walking Eagle and Mr. Pechota, who was still serving as Mr. Walking Eagle's counsel at the time the PSI was disclosed.  Mr. Pechota lodged a number of objections to the PSI on Mr. Walking Eagle's behalf, and Mr. Walking Eagle personally lodged a number of objections to the PSI himself.

Mr. Walking Eagle's sentencing took place on March 1, 2010, as scheduled, with Ms. Colbath representing him by this point.  Id. at Docket Nos. 278, 285.  See Transcript of Sentencing Hearing, Docket No. 310.  At that hearing, Mr. Walking Eagle withdrew all objections to the PSI except the objection to paragraph 10 of the PSI.  Id. at 2.  The lone remaining objection was an objection to the assertion that Mr. Walking Eagle had been a gang member or had been involved in any gang activity.  Id.  The government, noting that the objection did not have any affect on the guideline sentencing range, asked the court to sustain Mr. Walking Eagle's objection and strike paragraph 10 from the PSI.  Id. at 3.  The court did so.  Id.  The district court then sentenced Mr. Walking Eagle to 20 years imprisonment, the minimum term of incarceration allowed for the offense of continuing criminal enterprise.  Id.

12

After imposing sentence, the district court advised Mr. Walking Eagle again that he had given up his right to appeal under the terms of his plea agreement.  Id. at 30.  The court nevertheless told Mr. Walking Eagle that, if he thought there remained an appealable issue and wanted to appeal, he must file a notice of appeal within 14 days from that day with the clerk's office.  Id.  The court told Mr. Walking Eagle that if Ms. Colbath was unable to help him prepare his notice of appeal, he could contact the clerk's office and the clerk's office would prepare the notice of appeal and file it for him.  Id.  Mr. Walking Eagle stated that he understood that he would have to file a notice of appeal within 14 days with the clerk's office if he wanted to appeal.  Id.  No notice of appeal is contained in the court's docket for Mr. Walking Eagle's criminal case.

**D.      Habeas Facts Alleged**

      **1.      Claims alleged by Mr. Walking Eagle**

            **a.      Sixth Amendment ineffective assistance of counsel**

Mr. Walking Eagle alleges in his petition in this civil habeas case that he was deprived of his Sixth Amendment right to counsel in that his counsel was constitutionally  ineffective.  See Docket No. 1.  Mr. Walking Eagle's ineffective claims are alleged in counts I and V of his petition, but they will be discussed together here.

Initially, Mr. Walking Eagle asserted seven separate claims of ineffective assistance of counsel.  A single assertion in count I of his petition, and six

13

allegations in count V.  The government, in responding to Mr. Walking Eagle's petition denominated the six allegations in count V with the letters A through F.  <u>See</u> Docket No. 32, pages 19-27.  When Mr. Walking Eagle responded to the government's motion to dismiss, he abandoned claims A through D in count V, explaining that he had been "enlightened" by the government's pleadings.  <u>See</u> Docket No. 39, at page 1.  Thus, Mr. Walking Eagle is now asserting only those claims of ineffective assistance of counsel contained in count I and count V, parts E and F.  Since Mr. Walking Eagle has narrowed his request for habeas relief to these three grounds based on ineffective assistance, only these grounds will be discussed in this opinion.

Mr. Walking Eagle's first allegation is that he instructed Ms. Colbath to file an appeal from his sentence and she refused or failed to effectuate the appeal.  Mr. Walking Eagle stated that he intended to appeal the issue of whether the district court had jurisdiction over his case.

Mr. Walking Eagle then makes a categorical argument that, collectively, his attorneys were generally ineffective.  In this regard, the only factual support Mr. Walking Eagle offers is to argue that the result in his case would have been different if his attorneys had presented a coherent or unified strategy.

The specific allegations made by Mr. Walking Eagle are that his attorneys allowed the prosecutor to badger, harass, threaten, and lie to Mr. Walking Eagle.   He also alleges that his attorney was ineffective in allowing him to

14

plead guilty to continuing criminal enterprise when there was insufficient factual basis for this plea.

**b.     Fifth Amendment Due Process and Equal Protection**

Mr. Walking Eagle alleges that his Fifth Amendment right to Due Process was violated by the fact that he was charged with continuing criminal enterprise, which he alleges is void for vagueness.  He alleges that the crime requires the person convicted of it to have controlled others.  He alleges that he controlled no one's behavior except his own.

Mr. Walking Eagle also argues that his Due Process rights were violated because the prosecution threatened him with life imprisonment if he availed himself of his right to a jury trial.  He alleges that the prosecution of him by the United States [for continuing criminal enterprise] was vindictive and was brought about because he refused to plead guilty to conspiracy to distribute a controlled substance.  He further alleges that the prosecution lied to him about which of his co-defendants had pleaded guilty, making Mr. Walking Eagle's plea "not knowing."  Mr. Walking Eagle alleges that the prosecutor made affirmative misrepresentations to him about the impact Walking Eagle's brother's plea would have on Mr. Walking Eagle.  He alleges his brother's plea was obtained with deceit.

### c.     Sixth Amendment confrontation rights

Mr. Walking Eagle originally asserted that the district court violated his Sixth Amendment right to confront and cross-examine his accusers by refusing to order the government to reveal the names of its confidential informants and its sources of information.[3]  See Docket No. 1 at page 6, Ground IV.  He has now abandoned that claim.  See Docket No. 39 at page 1.

### d.     Equal Protection rights

Mr. Walking Eagle also originally asserted that his right to Equal Protection under the law was violated because the district court erred by accepting the statement of factual basis signed by Mr. Walking Eagle and his lawyer.  See Docket No. 1 at page 6, Ground IV.  He has now abandoned that claim.  See Docket No. 39 at page 1.

### 2.     Facts asserted by the government with testimony under oath

### a.     Affidavit of attorney Terry Pechota

Mr. Pechota testified in writing under oath as follows.  He stated that he is a member in good standing of the South Dakota, Iowa, and Colorado bar associations.  He has practiced law since 1972 and has extensive experience representing defendants charged with crimes in both state and federal courts, including the United States Supreme Court.  See Docket No. 32-2.

---

[3] Mr. Walking Eagle argues that this violated his Due Process rights, but the  right to confront and cross-examine one's accusers stems from the Sixth Amendment.

Mr. Pechota averred that he, Mr. Walking Eagle and the prosecutor had a meeting.  At that meeting, the prosecutor explained to Mr. Walking Eagle the possible maximum penalty if he were convicted at a jury trial of all of the charges in the superseding indictment.  Mr. Pechota stated that the prosecutor never at any time misrepresented facts to Mr. Walking Eagle nor did he relay any false information.  Mr. Pechota stated that never at any time did the prosecutor harass, belittle, or threaten Mr. Walking Eagle.

Mr. Pechota stated that he filed a motion to suppress on behalf of Mr. Walking Eagle in which he raised a <u>Franks</u> issue and objected to any suggestion that Mr. Walking Eagle participated in gang activity.  Mr. Pechota filed with the court an affidavit from Mr. Walking Eagle countering the allegation that he participated in gang activity.  Following the issuance of the magistrate judge's report and recommendation, Mr. Pechota filed objections with the district court again raising these two issues.

In preparation for trial, Mr. Pechota stated that he filed a motion to sever the trial of certain charges Mr. Walking Eagle was facing, as well as to sever Mr. Walking Eagle's trial from that of his co-defendants.  Mr. Pechota also filed a motion to dismiss, arguing that the charge of continuing criminal enterprise was void for vagueness under the Due Process Clause of the United States Constitution.

17

Mr. Pechota and Mr. Walking Eagle discussed the plea agreement that was entered into in this case in person.  Mr. Pechota personally read the plea agreement and statement of factual basis out loud and in their entirety to Mr. Walking Eagle.  Mr. Pechota explained to Mr. Walking Eagle that, if he entered into the plea agreement, he would give up his right to appeal his sentence unless the district court departed upward in sentencing him.

Mr. Pechota stated that he believed that when Mr. Walking Eagle signed the plea agreement and statement of factual basis he was acting voluntarily. Mr. Pechota believed that Mr. Walking Eagle orally entered a plea of guilty voluntarily.  Mr. Pechota averred that he believed he had personally advised Mr. Walking Eagle of all relevant information needed in order for Mr. Walking Eagle to make an informed decision to plead guilty.

After Mr. Walking Eagle had orally entered his plea of guilty in court and the PSI had been prepared, Mr. Pechota lodged several objections to the PSI. One of those objections disputed that Mr. Walking Eagle had a gang affiliation or had been involved in gang activity.

### b.    Affidavit of attorney Monica Colbath

Ms. Colbath testified in writing under oath as follows.  She stated that she is a member in good standing of the South Dakota State Bar Association and that she has been practicing law since 1994.  See Docket No. 32-1.  She was appointed to represent Mr. Walking Eagle after he had entered a plea of

guilty to engaging in a continuing criminal enterprise, but before Mr. Walking Eagle was sentenced on that charge.  Id.

Ms. Colbath reviewed the terms of the written plea agreement that Mr. Walking Eagle had entered into.  She noted that, as one of the terms of that agreement, Mr. Walking Eagle had given up his right to appeal except to raise jurisdictional issues or in the event the district court departed upward in sentencing him.

When Ms. Colbath began representing Mr. Walking Eagle, the PSI had already been drafted and Mr. Pechota had lodged numerous factual objections to the PSI.  Ms. Colbath reviewed these objections with Mr. Walking Eagle and, together, the two agreed to withdraw all of the objections except the objection to the assertion that Mr. Walking Eagle was a gang member.

At Mr. Walking Eagle's sentencing hearing, the district court questioned him under oath as to the withdrawal of all but one of his previously-asserted objections to the PSI.  Mr. Walking Eagle concurred on the record that it was his desire and intention to withdraw all objections except the objection as to gang activity.  The district court sustained Mr. Walking Eagle's objection regarding gang activity and ordered that any reference to gang activity on Mr. Walking Eagle's part be stricken from the PSI.

After sentencing Mr. Walking Eagle, the district court advised him on the record that, although he had only a limited right to appeal under his plea

agreement, if he wanted to pursue an appeal, he must file a notice of appeal within 14 days.  The district court went on to advise Mr. Walking Eagle that Ms. Colbath would prepare his notice of appeal should he wish to appeal.  The court also advised Mr. Walking Eagle that if Ms. Colbath were unable to prepare the notice of appeal, Mr. Walking Eagle could contact the district court's clerk's office and request that office to prepare the notice of appeal and they would do so and file it on his behalf.

After the sentencing, Ms. Colbath discussed with Mr. Walking Eagle the issue of whether to appeal.  The two specifically discussed the jurisdictional issue Mr. Walking Eagle was considering appealing.  Ms. Colbath had previously researched this jurisdictional issue and told him what his chances of success on that issue might be and the likely outcome of an appeal raising that issue.  At the end of this discussion, Mr. Walking Eagle indicated to Ms. Colbath that he did not want to appeal.  Mr. Walking Eagle never at any time spoke to Ms. Colbath to indicate that he had changed his mind about pursuing an appeal.

Ms. Colbath stated under oath that, had Mr. Walking Eagle told her he wanted to appeal, she would have pursued an appeal on his behalf in a timely manner.  Ms. Colbath stated she had no reason to try to discourage Mr. Walking Eagle from pursuing an appeal.  She also stated that he had no reason that she could not or would not file an appeal for him if asked to do so.

Ms. Colbath averred that she has pursued appeals in other cases on behalf of clients who, like Mr. Walking Eagle, waived their rights to appeal as part of a plea agreement.

Mr. Walking Eagle corresponded with Ms. Colbath by letter a number of times after his sentence was imposed.  He never indicated in any of these letters that he wanted to appeal.  He never indicated any disagreement about the decision that had been made not to appeal.  The first time Ms. Colbath became aware of the assertion that Mr. Walking Eagle had wanted to pursue a direct appeal was when he filed his petition in this case pursuant to 28 U.S.C. § 2255.

## DISCUSSION

The government, which is the respondent in this matter, moves to dismiss Mr. Walking Eagle's petition without holding an evidentiary hearing. "While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New v. United States, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).  With this standard in mind, the court evaluates each of Mr. Walking Eagle's claims.

**A.     Procedural Default**

The government argues in its brief that Mr. Walking Eagle has procedurally defaulted on many of his claims because he did not raise them on direct appeal.  Accordingly, the court addresses this argument first before addressing the merits of Mr. Walking Eagle's petition.

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either actual innocence or that the procedural default should be excused because there was both cause for the default and prejudice to the petitioner.  McNeal, 249 F.3d at 749.  Therefore, Mr. Walking Eagle must show both cause for why he failed to raise these issues on direct appeal as well as actual prejudice caused by these errors.

As stated above, Mr. Walking Eagle waived his appeal rights in his plea agreement.  See CR 08-50100-01, Docket No. 238.  A plea of guilty precludes a petitioner from raising claims in a § 2255 petition alleging violation of rights *prior to* the plea.  Brady v. United States, 397 U.S. 742, 748 (1970).  However, a plea of guilty does not waive arguments regarding the validity of the plea itself, including allegations of ineffective assistance of counsel during the plea

22

process.  United States v. Timmreck, 441 U.S. 780, 784 (1979); Fontaine v. United States, 411 U.S. 213, 215 (1973) (per curiam); Sanders v. United States, 373 U.S. 1 (1963).

Ineffective assistance of counsel claims are generally not reviewed on direct appeal and are properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining Mr. Walking Eagle's claims of constitutionally-deficient counsel.  As to the remaining claims not characterized as ineffective assistance of counsel claims, Mr. Walking Eagle must satisfy either the "actual innocence" showing, or he must demonstrate cause and prejudice for failing to raise those issues in a direct appeal.[4]

---

[4] A claim is deemed to have been properly presented and exhausted even if the appellate court rejected it on a procedural ground rather than addressing the merits.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Castille v. Peoples, 489 U.S. 346, 351-52 (1989); Teague v. Lane, 489 U.S. 288, 298 (1989); Smith v. Digmon, 434 U.S. 332, 333-34 (1978).  Thus, if Mr. Walking Eagle had appealed and the appeal had been dismissed pursuant to the waiver in his plea agreement, those claims would not be procedurally defaulted in this § 2255 action.  The above cases arise under 28 U.S.C. § 2254, but their analysis applies equally in § 2255 cases.  Frady, 456 U.S. at 167-68.

**B.      Ineffective Assistance of Counsel**

**1.      Applicable Standard for Ineffective Assistance Claims**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so

24

> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result
> unreliable.

Id.

Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.  "There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  Id.

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  Bobby v. Van Hook, ___ U.S. ____, 130 S. Ct. 13, 16 (2009) (*per curiam*).  American Bar Association standards, restatements of professional standards, and similar directives to lawyers are only guides as to whether counsel's conduct was reasonable, they are not definitive.  Id. at 16-17.  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of

25

his case, only that there is "a probability sufficient to undermine confidence in [that] outcome."   Porter v. McCollum, ___ U.S. ___, 130 S. Ct. 447, 455-56 (2009) (quoting Strickland, 466 U.S. at 693-94).

**2.   Application of Strickland to Mr. Walking Eagle's Claims**

**a.   Failure to Appeal**

Despite the two-pronged Strickland test, when an attorney fails to file a direct appeal after her client instructs her to do so, no inquiry into prejudice is allowed.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  Failure to pursue an appeal that has been requested by a client is deficient attorney performance *per se*.  Id.  In such a case, "prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error." Id. at 483-84.  This remains true even where, as here, the petitioner waived his appellate rights as part of the plea agreement.  Watson v. United States, 493 F.3d 960, 964 (8th Cir. 2007).  A defendant has "the ultimate authority" to determine "whether . . . to take an appeal."  Florida v. Nixon, 543 U.S. 175, 187 (2004).  As a matter of law, the right to appeal is one that can be waived only by the defendant himself, not by counsel.  Id.

In the Watson case, the district court was reversed because it denied habeas relief to a petitioner who alleged that he had requested an appeal and that his trial counsel had refused to appeal.  Id.  The Eighth Circuit stated that the district court "was not required to credit Watson's assertion" that he

26

wanted to appeal, but that the district court could not *discredit* that assertion without first holding an evidentiary hearing to evaluate Watson's credibility. Id.  See also Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000) (affirming district court's denial of habeas relief on a failure-to-appeal ineffective assistance claim where the court discredited the petitioner's testimony *after an evidentiary hearing* at which both the attorney and the petitioner testified).

It is axiomatic that the petitioner must show that he asked his trial counsel to file an appeal.  Barger, 204 F.3d at 1182 (citing Holloway v. United States, 960 F.2d 1348, 1357 (8th Cir. 1992)).  Here, Mr. Walking Eagle says he asked Ms. Colbath to appeal.[5]  Ms. Colbath states that Mr. Walking Eagle never indicated that he wanted to appeal.  This sets up a classic credibility conflict which this court believes requires an evidentiary hearing to resolve.  Watson, 493 F.3d at 964; Barger, 204 F.3d at 1182.  Accordingly, the court recommends that the government's motion to dismiss this allegation from Mr. Walking Eagle's petition without an evidentiary hearing be denied and that an evidentiary hearing be held.

---

[5] Mr. Walking Eagle's exact words taken from his petition are: "My attorney failed to file a direct appeal when asked."  See Docket No. 1, page 5. This statement is not ambiguous.

### b.     Ineffective assistance for allowing plea

Mr. Walking Eagle alleges that his attorney was ineffective in allowing him to plead guilty to continuing criminal enterprise when there was insufficient factual basis for this plea.  In particular, Mr. Walking Eagle alleges that there was not a factual basis for the assertion that he was an organizer, manager, or supervisor.  The elements of the crime of engaging in a continuing criminal enterprise are:

1.     a felony violation of the federal narcotics laws;

2.     as part of a continuing series of three or more related felony violations of federal narcotics laws;

3.     in concert with five or more other persons;

4.     for whom the defendant is an organizer, manager, or supervisor; and

5.     from which he derives substantial income or resources.

United States v. Jackson, 345 F.3d 638, 645 (8th Cir. 2003).  Evaluating the written statement of factual basis signed by Mr. Walking Eagle and agreed to under oath by him at his plea hearing, it is clear that the above elements are met.

The statement of factual basis asserts that Mr. Walking Eagle purchased many pounds of cocaine.  See CR 08-50100, Docket No. 240.  This satisfies the first element that Mr. Walking Eagle committed a felony violation of federal narcotics laws.

28

The statement of factual basis asserts that Mr. Walking Eagle did so in multiple transactions spanning a period of 10 years, each purchase involving as little as one-quarter of a pound of cocaine at a time and up to three-quarters of a kilogram of cocaine.  Id.   This assertion satisfied the second element of the crime in showing that Mr. Walking Eagle's felony drug violations were part of a continuing series of three or more related felony violations of the federal narcotics laws.

The statement of factual basis asserts that Mr. Walking Eagle committed these crimes with the aid of his brother, and at least ten other named individuals, some of whom were couriers, some of whom helped break down the bulk drug into retail packets, and some of whom sold the drug for Mr. Walking Eagle.  This satisfies the element of the crime requiring proof that Mr. Walking Eagle committed the first two elements in concert with five or more other persons.  Additionally, Mr. Walking Eagle signed the written plea agreement that stipulated that he was an organizer or leader in a criminal activity that involved five or more participates or was otherwise extensive.  See CR. 08-50100-01, Docket No. 238, ¶ E, page 3.

The statement of factual basis asserts that Mr. Walking Eagle was the sole person in control of the money and the drugs throughout the ten-year conspiracy, deciding how and to whom the drugs would be distributed and the retail price for each.  This assertion satisfies the second element showing that

29

Mr. Walking Eagle was an organizer, manager, or supervisor.  Mr. Walking Eagle attempts to undermine his prior, sworn testimony as to the truth of this statement by asserting in this habeas action that he was a mere seller of drugs. He alleges that his attorney ineffectively and erroneously counseled him that being a mere seller of drugs was sufficient to satisfy the "organizer, manager, or supervisor" element.  The court will discuss whether this allegation is sufficient to undermine the court's confidence in a knowing, intelligent, and voluntary plea below.

The final element requires proof that Mr. Walking Eagle derived substantial income or resources from this continuing criminal enterprise.  The statement of factual basis asserts that Mr. Walking Eagle "derived almost all of his income from the sale of cocaine" and that he made a profit of $2,200 to $2,350 for every ounce of cocaine that passed through the conspiracy.

For now, the court notes that the statement of factual basis does support the crime of continuing criminal enterprise.  It follows then that Mr. Pechota cannot have been ineffective in coming to that same conclusion.  As to this allegation, Mr. Walking Eagle has failed to show that Mr. Pechota's performance was deficient or that Mr. Pechota's performance prejudiced Mr. Walking Eagle as required by the Strickland test.

### c.     Ineffective assistance for allowing prosecutor to harass

Mr. Walking Eagle also alleges that his attorneys allowed the prosecutor to badger, harass, and threaten Mr. Walking Eagle and lie to him.  However, a plea of guilty precludes a petitioner from raising claims in a § 2255 petition alleging violation of rights *prior to* the plea.  Brady v. United States, 397 U.S. 742, 748 (1970).  Thus, any claim of prosecutorial misconduct preceding Mr. Walking Eagle's plea cannot now be raised.  Id.

In addition, the court notes that this claim by Mr. Walking Eagle in his habeas petition is in direct conflict with his own prior sworn testimony.  At the time he entered his plea of guilty before the district court, Mr. Walking Eagle told the court that no one had threatened or coerced him to enter into the plea agreement.  See United States v. Walking Eagle, CR. 08-50100-01, Docket No. 309, pages 4-5.

### d.     Failure to have a "coherent strategy"

Mr. Walking Eagle also makes a categorical argument that, collectively, his attorneys were generally ineffective.  In this regard, the only factual support Mr. Walking Eagle offers is to argue that the result in his case would have been different if his attorneys had presented a coherent or unified strategy. Mr. Walking Eagle cannot show prejudice because he has already received the benefit of the lowest possible sentence for his crime.  Montanye, 77 F.3d at 230-31.

The court notes that Mr. Walking Eagle had three attorneys during the course of his case before the district court.  The changes in attorneys were at his own behest.  No attorney quit representing Mr. Walking Eagle of their own accord.  The court never unilaterally removed any attorney from his case.  Each time Mr. Walking Eagle obtained new counsel, it was either because he privately hired that new lawyer (Mr. Pechota), or because he asked the court to discharge his current lawyer and appoint a new lawyer (Ms. Colbath).

"A habeas corpus petitioner, alleging ineffective assistance of counsel, must show that *a particular act or omission* fell below the standard acceptable for attorneys in the same or similar circumstances."  Beard v. Lockhart, 779 F.2d 23, 26 (8th Cir. 1985) (citing Strickland, 466 U.S. at 693) (emphasis added).  A general allegation, such as that counsel was not "fighting" the defendant's case properly, is insufficient to warrant habeas relief.  Id.  Likewise, Mr. Walking Eagle's allegation that the failure of his three attorneys to pursue a "coherent" strategy is simply not specific enough to state a claim for ineffective assistance of counsel which would warrant habeas relief.  This allegation, too, should be dismissed with prejudice.

**C.    Due Process**

Mr. Walking Eagle argues that his Fifth Amendment right to Due Process was violated as follows:  (1) the crime of continuing criminal enterprise is unconstitutionally vague; (2) the prosecution threatened him with life

imprisonment if he availed himself of a jury trial; (3) the prosecution's decision to charge him with continuing criminal enterprise was vindictive; (4) the prosecution lied to him about which co-defendants had pleaded guilty; (5) the prosecutor misrepresented the impact the plea by Mr. Walking Eagle's brother would have on his own case; and (6) the plea of Mr. Walking Eagle's brother was obtained by deceit.

As to the last claim, Mr. Walking Eagle has no standing to assert habeas claims on behalf of his brother.  Even if Mr. Walking Eagle succeeded in proving that his brother's plea was not valid, that would not affect Mr. Walking Eagle's own conviction nor the length of his sentence.

As to the claims that the crime of continuing criminal enterprise is unconstitutionally void and that the prosecutor committed misconduct, as noted before, generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  Frady, 456 U.S. at 167-68; McNeal, 249 F.3d at 749.  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either actual innocence or that the procedural default should be excused because there was both cause for the default and prejudice to the petitioner.  McNeal, 249 F.3d at 749. Mr. Walking Eagle never claims actual innocence.  Therefore, Mr. Walking

Eagle must show both cause for why he failed to raise these issues on direct appeal as well as actual prejudice caused by these errors.

The void-for-vagueness and prosecutorial misconduct issues were not raised on direct appeal.  Furthermore, they could not have been raised because Mr. Walking Eagle waived his right to appeal all but jurisdictional issues or upward departures.  Therefore, even if he established cause for the procedural default (i.e. his attorney did not appeal), he cannot show prejudice.

The three remaining claims of due process violation go to whether Mr. Walking Eagle's plea was voluntarily, knowingly, and intelligently made.  The Supreme Court addressed what is necessary to establish the voluntary, knowing, and intelligent nature of a plea of guilty to criminal charges in <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969).  In that case, Edward Boykin had pleaded guilty to five capital charges of robbery under Alabama law.  <u>Id.</u> at 239.  At his plea hearing, the judge asked Boykin no questions concerning his plea and Boykin did not otherwise address the court.  <u>Id.</u>  The Supreme Court reversed, holding that, "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." <u>Id.</u> at 242.

The Court stated that:

> A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.  Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant

34

> threats might be a perfect cover-up of unconstitutionality.  The
> question of an effective waiver of a federal constitutional right in a
> proceeding is of course governed by federal standards.

Id. at 242-243.  The Court noted that several federal constitutional rights are

involved in a waiver when a defendant pleads guilty:  the privilege against

compulsory self-incrimination under the Fifth and Fourteenth Amendments

and the right to trial by jury and to confront one's accusers under the Sixth

Amendment.  Id. at 243.  The Court held that the trial court must ensure that

the record on a defendant's waiver of trial rights is "adequate for any review

that may be later sought."  Id. at 238.  "[A] defendant's tacit acquiescence in

the decision to plead is insufficient to render the plea valid.  Florida v. Nixon,

543 U.S. 175, 187-188 (2004) (citing Boykin, 395 U.S. at 242).  Where the

record is insufficient to demonstrate that the defendant knew of the rights he

was waiving, the conviction must be reversed, even in the face of overwhelming

evidence that the defendant would have pleaded guilty regardless.  United

States v. Dominguez Benitez, 542 U.S. 74, 84 n.10 (2004).

      The Due Process Clause of the Fifth and Fourteenth Amendments

requires that a waiver of a constitutional right be "an intentional

relinquishment or abandonment of a known right or privilege."  Boykin, 395

U.S. at 243 n.5 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

Therefore, if a defendant's plea of guilty is not voluntary and knowing, it is a

violation of due process.  Id.; United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006).

Cases subsequent to Boykin have refined what kind of a record must be created in order to sustain the waiver of rights in a plea hearing.  For example, the Court has held that, although the record must reflect that the defendant was informed of the elements of the offense to which the defendant is pleading guilty, it is sufficient if defense counsel advises the defendant and the defendant confirms on the record that he has been so advised.  See Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005).

In addition, the Court has held that a defendant's plea is voluntarily and intelligently made even if the prosecution has not disclosed material impeachment evidence prior to the plea that it would have otherwise had to disclose if the defendant were insisting upon a trial.  United States v. Ruiz, 536 U.S. 622, 629 (2002).  Instead, it is sufficient if the defendant "fully understands the nature of the right [he is waiving] and how it would likely apply *in general* in the circumstances–even though the defendant may not know the *specific detailed* consequences of invoking [the right]."  Ruiz, 536 U.S. at 629.

A plea does not become unknowing merely because the defendant discovers after entering his plea that he misapprehended the quality of the government's case against him or "the likely penalties attached to alternative

courses of action." <u>United States v. Broce</u>, 488 U.S. 563, 572 (1989).  "[A]bsent

misrepresentation or other impermissible conduct by state agents, a voluntary

plea of guilty intelligently made in the light of the then applicable law does not

become vulnerable because later judicial decisions indicate that the plea rested

on a faulty premise." <u>Id.</u>  "[A] counseled defendant may not make a collateral

attack on a guilty plea on the allegation that he misjudged the admissibility of

his confession. 'Waiving trial entails the inherent risk that the good-faith

evaluations of a reasonably competent attorney will turn out to be mistaken

either as to the facts or as to what a court's judgment might be on given

facts.' " <u>Id.</u> (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 770 (1970)).  A

waiver is knowing and intelligent despite the fact that the defendant may not

have been consciously waiving each potential defense relinquished by his guilty

plea.  <u>Id.</u> at 573.  A waiver is also knowing and intelligent despite the

defendant's ignorance of facts which would have provided a basis for

challenging the indictment rendered by the grand jury.  <u>Id.</u> (citing <u>Tollett v.</u>

<u>Henderson</u>, 411 U.S. 258, 266 (1973)).

A plea of guilty cannot be attacked as involuntary in a habeas petition

because trial counsel erroneously informed the defendant of his parole

eligibility date should he plead guilty unless the defendant can show that

"there is a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 56-57 (1985).

"A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." <u>Mabry v. Johnson</u>, 467 U.S. 504, 509 (1984) (quoting from <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970)).

There are important policy concerns which support the finality of a knowing and voluntary guilty plea. <u>Blackledge v. Allison</u>, 431 U.S. 63, 71 (1977). For this reason, the force of the original plea hearing is great:

> . . . the representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

<u>Id.</u> at 73-74.

Here, Mr. Walking Eagle attempts to unravel the plea he entered by asserting that the prosecution threatened him with life imprisonment if he did not plead guilty, the prosecution lied to him about which co-defendants had

pleaded guilty, and the prosecution lied to him about the impact his brother's plea would have on his case.  He also attempts to unravel his statement under oath in court that he was the sole person in control of the money and the drugs throughout the ten-year conspiracy, deciding how and to whom the drugs would be distributed and the retail price for each.  Mr. Walking Eagle attempts in this habeas action to maintain that he was a mere seller of drugs.

Mr. Walking Eagle stated under oath at his change of plea hearing that no one had made any promises to him other than those contained in the plea agreement.  See CR 08-50100-01, Docket No. 309, at pages 4-5.  There are no representations or promises in the plea agreement concerning pleas of guilt by other co-defendants or the impact of those pleas on Mr. Walking Eagle's case.

He also stated under oath at his change of plea hearing that no one had threatened him or tried to force him to plead guilty.  CR 08-50100-01, Docket No. 309, at page 5.  He told the sentencing court under oath at his change of plea hearing that he had read the statement of factual basis before he signed it and that everything in that statement was true.  Id. at 11.

The court notes that the statement of factual basis does *not* contain the bald and conclusory assertion that Mr. Walking Eagle was an "organizer, manager, or supervisor."  Instead, that statement contains specific factual allegations about Mr. Walking Eagle's sole control of money, drugs, distribution, and price during the existence of the conspiracy.  See CR. 08-

39

50100-01, Docket No. 240.  As already concluded by the court, above, these assertions of fact satisfy the element of the crime of continuing criminal enterprise that Mr. Walking Eagle was an organizer, manager or supervisor. Thus, even if Mr. Walking Eagle's attorney erroneously told him that being a mere seller of drugs was sufficient to be an organizer, Mr. Walking Eagle asserted facts under oath which go far beyond being a mere seller and satisfy the statutory elements of the crime.

These sworn statements by Mr. Walking Eagle himself at the time of his plea contradict his current assertions that promises or threats were made to get him to plead guilty and that he was a mere seller of drugs.  When a defendant has pleaded guilty while represented by counsel, the representations he made at his plea hearing "carry a strong degree of verity and pose a ' " 'formidable barrier in any subsequent collateral proceedings.' " ' Ingrassia v. Armontrout, 902 F.2d 1368, 1370 (8th Cir. 1990) (quoting Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985); Blackledge, 431 U.S. at 74).  Later allegations during habeas proceedings are "merely bare assertions" that do not legally contradict the prior plea hearing testimony, nor do they merit an evidentiary hearing.  Ingrassia, 902 F.2d at 1370.  The court notes that not only are Mr. Walking Eagle's current assertions at odds with his own prior plea testimony under oath, they also contradict Mr. Pechota's sworn testimony in

this case that the prosecutor never lied, threatened, or coerced Mr. Walking Eagle.  See Civ. 11-5016, Docket No. 32-2.

As to the prosecutor's "threat" that Mr. Walking Eagle might get life imprisonment if he went to trial, that was not a threat, but the truth.  The crime of continuing criminal enterprise carries with it a potential maximum sentence of life imprisonment.  See 21 U.S.C. § 848(a); CR 08-50100-01, Docket No. 309, page 6.  If Mr. Walking Eagle was convicted of this crime following a full trial on the merits, life imprisonment would certainly be one of the potential sentences he would have faced.  In return for his plea of guilty, Mr. Walking Eagle got the benefit of his bargain with the government by gaining the government's agreement to recommend the bare minimum sentence available–240 months, or 20 years–instead of requesting a life sentence.  See CR 08-50100-01, Docket No. 238, ¶ I, page 5.  This was not a "threat" which undermines the validity of Mr. Walking Eagle's plea.  Instead, it was a term of Mr. Walking Eagle's agreement with the government–a term from which he ultimately benefitted.  See Williams v. Missouri, 640 F.2d 140, 143 (8th Cir. 1981) (denying habeas relief where prosecutor's tactics were legitimate in telling the defendant that the prosecution would seek more severe charges or punishment if the defendant did not plead guilty to current charges).

A review of the totality of circumstances in this case, including the plea transcript from Mr. Walking Eagle's change of plea hearing, CR 08-50100-01,

41

Docket No. 309, and the written plea agreement and statement of factual basis,

Docket Nos. 238 and 240, leads this court to conclude that Mr. Walking Eagle

made a voluntary, knowing, and intelligent plea with the assistance of

competent counsel who informed him of all the relevant law and facts.  Boykin,

395 U.S. 238-42.  Accordingly, the court recommends that all of Mr. Walking

Eagle's habeas claims premised on alleged due process violations be dismissed

with prejudice.

**D.      *Ex Post Facto* Claim**

Article I of the United States Constitution provides that neither Congress

nor any state may pass any "*ex post facto* law."  See U.S. Const. Art. I, § 9,

cl. 3; Art. I, § 10, cl. 1.  In his response in opposition to the government's

motion to dismiss, Mr. Walking Eagle raises for the first time an argument

based on the *ex post facto* clause.  Mr. Walking Eagle argues that the

mandatory minimum sentence for the crime of continuing criminal enterprise

was originally 10 years when Mr. Walking Eagle began his drug conspiracy,

and was increased to 20 years by the time Mr. Walking Eagle was indicted.[6]

---

[6] Mr. Walking Eagle asserts, for the first time in his brief opposing the
government's motion to dismiss, that he actually began his drug conspiracy in
1986.  See Docket No. 39, page 1.  He asserts that the mandatory minimum
sentence for continuing criminal enterprise was increased from 10 to 20 years
in 1988.  Id.  The fact that Mr. Walking Eagle's prior sworn testimony is
different from the facts asserted in his brief are but one of many problems with
his *ex post facto* argument.  Because the argument fails on the merits, the
court will not further address any procedural irregularities.

This, he argues, violates the *ex post facto* clause and his sentence should be reduced to 10 years.[7]

"The *ex post facto* clause generally prohibits the retroactive application of a criminal statute that changes the legal consequences for a crime after its was committed." United States v. Mueller, 661 F.3d 338, 345 (8th Cir. 2011).  A law which violates the *ex post facto* clause satisfies two elements:  (1) the law applies to events which occurred before the law was enacted; and (2) the defendant is thereby disadvantaged.  Id.

In Mueller, the defendant beat a person to death in 1992 in a murder-for-hire scheme.  Id. at 343.  Defendant received a payment of $15,000 for committing the murder in October, 1994.  Id.  At the time the murder was committed, there was a five-year statute of limitations for the crime of murder-for-hire.  Id. at 345.  In September, 1994, the statute of limitations for the crime of murder-for-hire was eliminated in cases where the scheme resulted in death.  Id.  Defendant was indicted for the crime of murder-for-hire in 1999 or later.  Id. at 344.  Defendant argued that the application of the new limitations

---

[7] The court notes that this claim is not properly before the court. Mr. Walking Eagle did not raise an *ex post facto* claim in his original habeas petition.  See Docket No. 1.  And he has not moved the court to amend his petition to add that claim, although he titled his brief in opposition "Petitioner's Amended 2255 Claim."  Nevertheless, in the interest of providing a complete record for the district court on each of the arguments contained in Mr. Walking Eagle's final brief, the court will briefly address the merits of the argument.

period to him violated the *ex post facto* clause because the murder was committed while the original five-year limitations period was applicable, thus making his 1999 indictment seven years later outside the limitations period. Id. at 344-45.

The court noted that one of the elements of murder-for-hire is the use of the mails and the receipt of pecuniary gain.  Id. at 345.  Under the facts of the case, the mails had been used to obtain insurance monies for the victim's death and defendant received a portion of those insurance monies after the enactment of the new limitations period.  Id. at 345-46.  The court held that, under these facts, no *ex post facto* violation occurred.  Id. at 346.

In Mr. Walking Eagle's case, as in Mueller, elements of the crime of continuing criminal enterprise occurred both before and after the statute was amended to increase the mandatory minimum sentence.  Unlike Mueller, however, according to the facts stipulated to by Mr. Walking Eagle at his plea, every element necessary to prove the crime of continuing criminal enterprise can be found *after* the amendment to the statute.  Accordingly, there has been no *ex post facto* violation.  Mueller, 661 F.3d at 346.  The court recommends, should the district court believe that Mr. Walking Eagle's *ex post facto* claim is properly before the court, that the court dismiss this claim on the merits without benefit of an evidentiary hearing.

## CONCLUSION

Based on the above-cited facts and law, this court recommends that the government's motion to dismiss all of petitioner Kevin Walking Eagle's claims for habeas relief pursuant to 28 U.S.C. § 2255 [Docket No. 29] be granted in part and denied in part. This court recommends dismissing all of Mr. Walking Eagle's claims with prejudice except one.

The one claim this court recommends not dismissing is the claim that Mr. Walking Eagle was denied effective assistance of counsel under the Sixth Amendment because he told his counsel to appeal and his counsel did not carry out his wishes. The court further recommends that an evidentiary hearing be held on this one limited issue and that counsel be appointed to represent Mr. Walking Eagle for that hearing.

The issues of scheduling for an evidentiary hearing and appointment of counsel for Mr. Walking Eagle for that hearing will be taken up by this court, if appropriate, after resolution by the district court of objections to this report and recommendation if any are made.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific in order to require *de novo* review by the district court.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

 Dated January 12, 2012.

    BY THE COURT:

    /s/ *Veronica L. Duffy*
    _____

    VERONICA L. DUFFY
    UNITED STATES MAGISTRATE JUDGE