UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN WALKING EAGLE, | ) | Civ. 11-5016-KES |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER ADOPTING REPORT AND |
| | ) | RECOMMENDATION |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, Kevin Walking Eagle, filed a pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The United States moves to dismiss Walking Eagle's § 2255 motion. This court referred the matter to Magistrate Judge Veronica Duffy for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). On January 12, 2012, Magistrate Judge Duffy submitted her report and recommended that the court dismiss all of Walking Eagle's claims except one: his claim that he was denied effective assistance of counsel under the Sixth Amendment when his attorney failed to file an appeal as directed. Magistrate Judge Duffy also recommended that this court hold an evidentiary hearing on that issue and that counsel be appointed to represent Walking Eagle at the evidentiary hearing. Both Walking Eagle and the United States filed timely objections to the report and recommendation.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), "when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.' " *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). Objections must be timely and specific in order to require de novo review by the district court. *Thompson v. Nix*, 897 F.2d 356, 358 (8th Cir. 1990). Because both parties filed timely objections, the court will review the matters objected to de novo.

## BACKGROUND

Walking Eagle was first arrested on October 16, 2008. Walking Eagle was initially charged with conspiracy to distribute controlled substances, possession with intent to distribute a controlled substance, and distribution of a controlled substance. *See United States v. Walking Eagle*, CR. 08-50100-01-KES, Docket 1 (CR Docket). Law enforcement then monitored and recorded telephone calls that Walking Eagle made from the jail after his initial appearance. These phone calls appeared to be attempts by Walking Eagle to continue his participation in the drug conspiracy from his

location at the jail.[1] A superseding indictment was issued approximately three months later that charged Walking Eagle with conspiracy to distribute cocaine and marijuana, possession with intent to distribute cocaine, distribution of cocaine, and engaging in a continuing criminal enterprise. CR Docket 83.

At Walking Eagle's initial appearance, the court appointed Robert Van Norman to represent Walking Eagle. CR Docket 15. Mr. Van Norman immediately moved the court for the appointment of a paralegal and a private investigator to assist him in representing Walking Eagle. Those motions were granted. CR Docket 35.

Slightly over a month later, Walking Eagle then privately retained attorney Terry Pechota, who made his appearance on Walking Eagle's behalf on November 24, 2008, terminating Mr. Van Norman's representation. CR Docket 68. Some nine months later, Mr. Pechota's status as a privately retained lawyer was converted to that of a court-appointed lawyer at Mr. Pechota's request. CR Docket 293 (Sept. 15, 2009).

---

[1]The recordings of these phone calls were introduced as evidence in one of the many bail review hearings requested by Walking Eagle. They are filed under seal in CR. 08-50100-01, Docket 130, and were reviewed by Magistrate Judge Duffy when ruling on the Motion for Reconsideration found at CR Docket 129.

On April 2, 2009, Mr. Pechota filed a motion to suppress evidence on behalf of Walking Eagle. CR Docket 149. In the motion, Mr. Pechota sought to suppress the fruits of two search warrants, the contents seized from a motor vehicle, the results of a drug dog alert to that motor vehicle, and the previously mentioned telephone calls made by Walking Eagle from the jail. *Id.* As to the search warrants, Mr. Pechota argued that: (1) the search warrants lacked probable cause; (2) the information from confidential informants was not reliable and could not support probable cause; (3) the information presented in the affidavit in support of the request for the search warrant was stale; and (4) the affiant who obtained the search warrants had included false statements or omitted material information, either intentionally or with reckless disregard, from his affidavit. *Id.*

Magistrate Judge Duffy held an evidentiary hearing on Mr. Pechota's motion to suppress on September 9, 2009, and Walking Eagle was present for the hearing. The day after the hearing, a report and recommendation was filed recommending denial of the motion to suppress in all respects. CR Docket 189. Magistrate Judge Duffy concluded that Mr. Pechota had made a sufficient preliminary showing to allow him to probe the credibility of the search warrant affiant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). *Id.* Mr. Pechota cross-examined the affiant about the veracity of the statements made in the affidavit in support of the

4

search warrant and questioned the affiant as to whether there were any material misrepresentations or omissions of fact from that affidavit. *Id.* The court ultimately rejected Mr. Pechota's *Franks* argument. *Id.* Mr. Pechota then timely objected to the magistrate judge's report and recommendation. CR Docket 199. Mr. Pechota objected to the magistrate judge's conclusions about the admissibility of Walking Eagle's jail phone calls, the fruits of the search warrant executed on his home, and the search of the motor vehicle. *Id.* In objecting to the magistrate judge's recommendation as to the search warrants, Mr. Pechota renewed his *Franks* arguments, asserting that the affidavits contained false statements or material omissions. *Id.* Mr. Pechota specifically argued that the statements in the affidavits tying Walking Eagle to gang activity were false and without any factual support. *Id.*

While the objections to the recommended disposition of the suppression motion were pending, Mr. Pechota filed a number of other motions on Walking Eagle's behalf. Among those were a motion to dismiss the indictment, a motion to sever Walking Eagle's trial from that of his codefendants, a motion to compel the government to reveal the identities of its sources of information and confidential informants, a motion for a change of venue, and a motion to dismiss the indictment for want of jurisdiction. CR Docket 224, 225, 227, and 228. Among the arguments posited in support of the motion to dismiss the indictment was an argument that the crime of continuing

5

criminal enterprise in count III of the indictment violated Walking Eagle's due process rights because it was too vague and did not allow persons to determine what conduct was made unlawful by the statute. CR Docket 227. Before this court ruled on any of these pending motions or on Mr. Pechota's objections to the magistrate judge's recommendation on the suppression motion, Walking Eagle entered a plea of guilty to the continuing criminal enterprise count.

A written plea agreement and statement of factual basis were signed by Walking Eagle and filed on November 17, 2009. Pursuant to the written plea agreement, Walking Eagle agreed to plead guilty to count III of the superseding indictment, which charged Walking Eagle with the crime of knowingly and intentionally engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) and (c). *See* CR Docket 83, 238. Count III of the indictment charged that Walking Eagle had violated 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to distribute controlled substances, and that he engaged in a continuing series of violations of these drug laws from no later than 1999 continuing up through the December 16, 2008, date of the indictment. CR Docket 83.

The statement of factual basis, which was signed by Walking Eagle, Mr. Pechota, and the prosecutor, stipulated that in 1998, Walking Eagle was introduced to drug suppliers in Denver, Colorado, by a man named Joe

6

Valdez. CR. Docket 240. After the introduction, Walking Eagle began purchasing cocaine from these Denver suppliers and distributing the cocaine on the Pine Ridge Indian Reservation in the District of South Dakota. *Id.* He began doing so at quantities of approximately one-quarter of a pound of cocaine, but by 2008, Walking Eagle was purchasing three-quarters of a pound at a time. *Id.* The statement stipulated that Walking Eagle rarely transported the cocaine himself, but he would have others take care of that task. *Id.* The statement stipulated that Walking Eagle and others recruited couriers to work for him. *Id.* Once the details of a purchase were worked out, Walking Eagle or his brother would provide a vehicle and the contact information to the couriers. Id. Walking Eagle was exclusively responsible for providing the money for these drug purchases and his brother was exclusively responsible for negotiating the terms of the purchase. *Id.* When the cocaine arrived, Walking Eagle paid his brother, usually with cocaine. *Id.* Walking Eagle would then work with others to break the bulk drugs down into .4-gram packets that were subsequently then sold as "half grams." *Id.* Walking Eagle would then apportion the packets in bundles of twenty to trusted dealers. *Id.* Walking Eagle's brother took care of paying the couriers. *Id.*

Under the terms of the written plea agreement, Walking Eagle waived

his right to appeal except in two circumstances: (1) if the district court departed upwards in sentencing him or (2) if there were issues as to the district court's jurisdiction. *Id.* at 238. Walking Eagle also waived all defenses. Id. The written plea agreement stated that the crime of continuing criminal enterprise carried a mandatory minimum sentence of 20 years' imprisonment (240 months) and a maximum sentence of life imprisonment. *Id.*

An oral change of plea hearing was held on November 18, 2009, before the district court. CR Docket 238, 240, 242, and 248. During the hearing, Walking Eagle was placed under oath. CR Docket 309 at 2. He was advised that all his testimony, if false, was subject to prosecution for perjury. *Id.* Walking Eagle stated that he had gone to school through the eleventh grade and had obtained his general equivalency diploma. *Id.* at 3. He denied any recent treatment for mental illness or for drug or alcohol abuse. *Id.* Except for high blood pressure medicine, he denied having recently ingested any drug, medication, or alcohol. *Id.* He stated that his high blood pressure medication did not interfere with his ability to understand what was happening at the hearing. *Id.* Walking Eagle told the court that he had received a copy of the superseding indictment, had read it, and had discussed it with Mr. Pechota. *Id.* at 4. Walking Eagle told the court that he was fully satisfied with the advice and representation that Mr. Pechota had given him. *Id.* Walking Eagle also stated that he had read the written plea agreement and had discussed it

with Mr. Pechota. He asserted that the terms contained in the written plea agreement represented–in their entirety–all of the understandings that he had with the government. *Id.* He specifically denied that any promises or assurances had been made to him that were not contained in the written plea agreement. *Id.* at 4-5. Walking Eagle told the court that no one had threatened him or coerced him to get him to accept the plea agreement. *Id.* at 5. Walking Eagle testified that he was pleading guilty of his own free will because he was guilty. *Id.*

With regard to the charge of continuing criminal enterprise, the court advised Walking Eagle that the minimum term of incarceration for that offense was 20 years' imprisonment and that the maximum term of incarceration was life in prison. *Id.* at 6. Walking Eagle stated that he understood those penalties. *Id.* at 7. Walking Eagle told the court that he understood that, by pleading guilty, he was giving up his right to appeal according to the agreement he had signed. *Id.* at 8. Walking Eagle said he understood that the only exceptions to this appeal waiver were to raise jurisdictional questions or to challenge an upward departure if the court adopted one at sentencing. *Id.* at 8-9. The court advised Walking Eagle that, if he pleaded guilty, he would give up his right to a jury trial, his right to be presumed innocent, his right to make the government prove the charges against him beyond a reasonable doubt, the right to confront and

9

cross-examine witnesses, his right to put on evidence on his own behalf, and his right to remain silent. *Id.* at 9-10. Walking Eagle told the court he understood what he would be waiving if he pleaded guilty. *Id.* at 10. The court advised Walking Eagle of the elements of the offense of continuing criminal enterprise that the government would have to prove if Walking Eagle went to trial: that from 1999 through the date of the indictment, at Pine Ridge, in the District of South Dakota, and elsewhere, he committed the offense of conspiracy to distribute or to possess with intent to distribute a controlled substance, distribution of a controlled substance, or possession with intent to distribute a controlled substance; that the offense was part of a continuing series of three or more related felony violations of the federal controlled substance laws; that such offenses were undertaken in concert with five or more other persons; that he acted as an organizer, supervisor, or manager of those five or more other persons; and that he obtained a substantial amount of money or other property from the series of violations. *Id.* at 10-11. Walking Eagle told the court that he understood that the government would have to prove these elements if he went to trial. *Id.* at 11.

The court then asked Walking Eagle if he had read the statement of factual basis before he signed it. *Id.* Walking Eagle stated that he had. *Id.* He further told the court that everything in the statement of factual basis was

10

the truth. *Id.* Walking Eagle then entered a plea of guilty to the charge of continuing criminal enterprise. *Id.* The court made a finding that Walking Eagle was fully competent and capable of entering an informed plea. *Id.* The court found that Walking Eagle was aware of the nature of the charges and the consequences of the plea. *Id.* The court also found that Walking Eagle's plea of guilty was knowing and voluntary and was supported by an independent basis in fact that contained each of the essential elements of the offense. *Id.* at 11-12. Walking Eagle's plea of guilty was accepted. *Id.* at 12. Walking Eagle's sentencing hearing was scheduled on March 1, 2010. CR Docket 249.

Five days after entering his plea of guilty pursuant to the plea agreement, Mr. Pechota filed a motion seeking Walking Eagle's release pending sentencing. CR Docket 258. The district court denied the post-plea motion for release of Walking Eagle. CR Docket 259. Mr. Pechota filed an appeal of the district court's denial of his post-plea motion for release to the Eighth Circuit Court of Appeals. CR Docket 260. The Eighth Circuit denied the appeal approximately six weeks after the notice of appeal was filed. CR Docket 265.

Eight days later, Walking Eagle filed a pro se motion with the court asking the court to remove Mr. Pechota and appoint new counsel for his

sentencing. CR Docket 267. In his *ex parte* communication with the court, Walking Eagle never asked to be allowed to withdraw his plea of guilty. *Id.* Walking Eagle specifically requested that the court appoint Ms. Monica Colbath to represent him. *Id.* The court granted Walking Eagle's motion, in which Mr. Pechota concurred, and appointed Ms. Colbath to represent him. CR Docket 269, 270.

After the presentence investigation was conducted, a presentence investigation report (PSI) was given to both the government and to Walking Eagle and Mr. Pechota, who was still serving as Walking Eagle's counsel at the time the PSI was disclosed. Mr. Pechota lodged a number of objections to the PSI on Walking Eagle's behalf, and Walking Eagle personally lodged a number of objections to the PSI himself.

Walking Eagle's sentencing took place on March 1, 2010, as scheduled, with Ms. Colbath representing him by this point. *See* CR Docket 310,  Transcript of Sentencing Hearing. At that hearing, Walking Eagle withdrew all his objections to the PSI except the objection to paragraph 10 of the PSI. *Id.* at 2. The lone remaining objection was an objection to the assertion that Walking Eagle had been a gang member or had been involved in gang activity. *Id.* The government, noting that the objection did not have any effect on the guideline sentencing range, asked the court to sustain Walking Eagle's objection and strike paragraph 10 from the PSI. *Id.* at 3. The

court did so. *Id.* The district court then sentenced Walking Eagle to 20 years' imprisonment, the minimum term of incarceration allowed for the offense of continuing criminal enterprise. *Id.* After imposing sentence, the district court advised Walking Eagle again that he had given up his right to appeal under the terms of his plea agreement. *Id.* at 30. The court nevertheless told Walking Eagle that, if he thought there remained an appealable issue and he wanted to appeal, he must file a notice of appeal within 14 days with the clerk's office. *Id.* The court told Walking Eagle that if Ms. Colbath was unable to help him prepare his notice of appeal, he could contact the clerk's office and the clerk's office would prepare the notice of appeal and file it for him. *Id.* Mr. Walking Eagle stated that he understood that he would have to file a notice of appeal within 14 days with the clerk's office if he wanted to appeal. *Id.* No notice of appeal was filed.

Walking Eagle filed the instant motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 on March 3, 2011. In his motion, Walking Eagle alleges that he received ineffective assistance of counsel, that his Fifth Amendment due process rights were violated, that his Sixth Amendment confrontation rights were violated, and that his right to equal protection of the laws under the Fifth Amendment was violated. Walking Eagle's ineffective assistance of counsel claim is predicated on several grounds: (1) that his attorney failed to file a notice of appeal when directed;

13

(2) that his attorney permitted him to plead guilty when there was an insufficient factual basis for his plea; (3) that his attorney allowed the prosecutor to harass him, and (4) that his attorneys, collectively, failed to have a "coherent strategy." Magistrate Judge Duffy recommended that all of Walking Eagle's claims be dismissed, except for his claim that he received ineffective assistance of counsel when his attorney failed to file a notice of appeal.

## DISCUSSION

### I.   Walking Eagle's Factual Objections

The court will first address Walking Eagle's factual objections to Magistrate Judge Duffy's report and recommendation. Walking Eagle first objects to Magistrate Judge Duffy's characterization of his phone calls from the jail as "attempts to continue his participation in the drug conspiracy" and argues that it should not be included in the court's order unless he is permitted to brief the issue. Walking Eagle also asserts that the phone calls are not pertinent to his § 2255 motion. Whether Walking Eagle's phone calls were attempts to continue his participation in the drug conspiracy is irrelevant to the resolution of the claims contained in his § 2255 motion. But the record supports Magistrate Judge Duffy's characterization of the phone calls. *See* CR Docket 130 (recordings of phone calls). Thus, Walking Eagle's objection is overruled.

14

Walking Eagle next objects that the summary of the facts does not include certain arguments made in the motion to dismiss and for severance. Docket 43 at 1-2. Specifically, Walking Eagle asserts that his attorney argued that "the manner in which the counts are phrased, the activities and conduct could have commenced at some earlier time than 1999" and that the counts should be severed because "there are some counts that defendant [Walking Eagle] would testify on, but not others, forcing him to make a difficult choice of testifying to all or none." *Id.* Magistrate Judge Duffy's summary did not purport to reiterate all of the arguments made in the motion. Because Walking Eagle pleaded guilty before the court could rule on the motion to dismiss and motion to sever, the district court did not rule on the motions. The arguments contained therein are irrelevant to this court's resolution of Walking Eagle's § 2255 claims. Thus, this objection is overruled.

Walking Eagle objects "to the Report and Recommendation's inference that the alleged continuing criminal enterprise began 'no later than 1999.' " Docket 43 at 2. Walking Eagle contends that "the Factual Basis Statement agreed to by the Government specifically represents that the alleged enterprise began prior to 1999[.]" *Id.* The report and recommendation later clarifies that Walking Eagle was introduced to drug suppliers in 1998. *See* Docket 40 at 6. Thus, Walking Eagle's objection is overruled.

15

Walking Eagle next objects that the report and recommendation misquotes the factual basis statement. Docket 43 at 2. Specifically, he states that the report and recommendation asserts that Walking Eagle and others recruited drug couriers, but that the factual basis statement states that Walking Eagle's brother, Ken Walking Eagle, recruited the couriers. *Id.* The factual basis statement does state that Ken Walking Eagle recruited the couriers. CR Docket 240. Thus, Walking Eagle's objection is granted and the report and recommendation will be amended to reflect this change.

## II.      Walking Eagle's Legal Objections

### A.      Ineffective Assistance of Counsel for Allowing Plea

Walking Eagle objects to Magistrate Judge Duffy's conclusion that his attorney was ineffective for allowing him to plead guilty to continuing criminal enterprise when there was an insufficient factual basis for this plea.

The elements of 21 U.S.C. § 848, the continuing criminal enterprise statute, are met if the defendant commits: (1) a felony violation of the federal narcotics laws; (2) as part of a continuing series of [three or more related felony] violations [of federal narcotics laws]; (3) in concert with five or more [other] persons; (4) for whom the defendant is an organizer [, manager] or supervisor; (5) from which he derives substantial income or resources. *United States v. Jelinek*, 57 F.3d 655, 657 (8th Cir.1995). Walking Eagle does not object to Magistrate Judge Duffy's finding that his conduct satisfies the first,

16

second, third, and fifth elements of § 848. Thus, the only issue is whether his conduct meets the organizer, manager, or supervisor element.

"[T]he basic elements of the . . . management element have been liberally construed." *United States v. Roley*, 893 F.2d 992, 994 (8th Cir. 1990) (citations omitted). This element is satisfied if "the defendant exerted some type of influence over another individual as exemplified by that individual's compliance with the defendant's directions, instructions, or terms." *United States v. Possick*, 849 F.2d 332, 335 (8th Cir. 1988). But "a mere buyer-seller relationship is not sufficient to satisfy the management element." *United States v. Jackson*, 345 F.3d 638, 646 (8th Cir. 2003). Walking Eagle now contends he was a mere seller of drugs.

The factual basis statement, however, demonstrates otherwise. The factual basis statement specifies that Walking Eagle would contact the suppliers in Denver and then have his brother transport or arrange for the transportation of the drugs from Denver to Pine Ridge. CR Docket 240. When the couriers left the reservation, either Walking Eagle or his brother would obtain a vehicle and provide the couriers with the necessary contact information. *Id.* Walking Eagle would provide the money for the runs. *Id.* When the drugs arrived, Walking Eagle would break them down and parcel them out to a number of trusted dealers. Walking Eagle instructed his dealers

17

to sell the drugs for $50 per half-gram. *Id.* These facts demonstrate that Walking Eagle was more than a mere seller of drugs.

In *United States v. Vasquez*, 552 F.3d 734, 738 (8th Cir. 2009), the Court of Appeals for the Eighth Circuit affirmed a district court's finding that a defendant was a manager of a methamphetamine ring because there was testimony that the defendant would set the price of the drugs based on their quality and quantity and tell the coconspirator where to meet him. In *United States v. Gaines*, 639 F.3d 423, 429 (8th Cir. 2011), the court affirmed a finding that a defendant was a manager or organizer because he manufactured the drug to be distributed, distributed the end product to others, at a price he set, for redistribution in smaller quantities. In *Gaines*, the defendants' "primary enterprise responsibilities included dividing, preparing, packaging, and distributing cocaine to lower distributors and sellers." *Id.* at 427. Here, Walking Eagle admitted to contacting suppliers in Denver, arranging for vehicles for the drug couriers, breaking the drug down into smaller quantities for resale, and setting the sales price of the smaller quantities. On these facts, the court cannot conclude that there was an insufficient factual basis for his plea. Because the court finds there was a sufficient factual basis for his plea, Walking Eagle's attorney's performance cannot have been deficient. Consequently, Walking Eagle's claim that he received ineffective assistance of counsel because his attorney allowed him to

18

plead guilty to continuing criminal enterprise when there was an insufficient factual basis for the guilty plea fails.

### B.    Ex Post Facto Claim

Walking Eagle next contends that the report and recommendation did not address his allegations that his attorney failed to investigate "when the alleged continuing criminal enterprise began, and then improperly advised Petitioner that the mandatory minimum in Petitioner's case was twenty and not ten years." Docket 43 at 8. The report and recommendation did address this claim, and noted that Walking Eagle did not raise this claim in his § 2255 motion or in his memorandum in support of his motion. Nor did Walking Eagle move to amend his motion to add this claim. Rather, Walking Eagle attempts to assert an ex post facto claim in his brief opposing the United States' motion to dismiss. *See* Docket 39 at 1. In his objections to the report and recommendation, Walking Eagle also couches this claim in terms of ineffective assistance of counsel. Neither of these claims is properly before the court. Thus, Walking Eagle's objections are overruled.

Even if  Walking Eagle's claim were before this court, he would not be entitled to relief. Walking Eagle asserts that he received ineffective assistance of counsel because his attorney did not investigate whether Walking Eagle began distributing drugs before the date alleged in the indictment. According to Walking Eagle, he has been distributing drugs since 1986. The mandatory

minimum sentence for a violation of 28 U.S.C. § 848 was changed from ten years to twenty years on November 18, 1988, two years after Walking Eagle alleges he began his "continuous distribution of narcotics on the reservation." Docket 43 at 9. Thus, Walking Eagle reasons the mandatory minimum sentence should be ten years, rather than twenty years, because the statute "was violated both before and after the enactment of the 1988 statutory mandatory minimum penalty change." *Id.* Based on this reasoning, Walking Eagle contends that his present sentence violates the ex post facto clause, and he asserts that he received ineffective assistance of counsel.

The ex post facto clause generally prohibits the retroactive application of a criminal statute that changes the legal consequences for a crime after it was committed. *Miller v. Florida*, 482 U.S. 423, 430 (1987). "Two elements must be met before legislation violates the ex post facto clause: (1) the legislation in question must apply to events occurring before its enactment; and (2) the offender affected by the legislation must be disadvantaged." *United States v. Mueller*, 661 F.3d 338, 345 (8th Cir. 2011) (citing *United States v. Chandler*, 66 F.3d 1460, 1467 (8th Cir. 1995)). Walking Eagle asserts that elements of the crime of continuing criminal enterprise occurred both before and after the statute was amended.

" 'An offense is committed when it is completed, that is, when each element of that offense has occurred.' " *United States v. Gonzalez*, 495 F.3d

577, 580 (8th Cir. 2007) (quoting *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999)). Here, Walking Eagle stipulated that *every element* necessary to prove the crime of continuing criminal enterprise occurred after the amendment to the statute. *See* CR Docket 240, Statement of Factual Basis. Thus, there has been no ex post facto violation. *See Mueller*, 661 F.3d at 346 (holding that there was no ex post facto violation where the "conduct essential to completing the crime and proving the murder-for-hire scheme . . . occurred after the amendment . . . took effect."); *United States v. Zimmer*, 299 F.3d 710, 718 (8th Cir. 2002) (holding that there was no ex post facto violation where evidence showed that defendant continued to participate in drug conspiracy after the amendment of the sentencing guidelines to produce a harsher sentence). Because no ex post facto violation occurred, Walking Eagle's attorney's performance was not deficient. Thus, the court need not consider whether Walking Eagle was prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

## III. **The United States' Objection**

The United States objects to Magistrate Judge Duffy's conclusion that Walking Eagle is entitled to an evidentiary hearing on his claim that he received ineffective assistance of counsel when his attorney failed to file an

appeal when instructed. Walking Eagle asserts that he asked his attorney, Monica Colbath, to appeal. *See* Docket 1 at 5 ("My attorney failed to file a direct appeal when asked). Ms. Colbath states that Walking Eagle never indicated that he wanted to appeal. *See* Docket 32-1, Affidavit of Monica Colbath, at ¶ 10. Magistrate Judge Duffy found that this resulted in "a classic credibility conflict which this court believes requires an evidentiary hearing to resolve." Docket 40 at 27. The United States objects to this conclusion and argues that Walking Eagle's claim is contrary to the evidence in the record.

A § 2255 petitioner is entitled to an evidentiary hearing on his claim "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). But a petitioner must "allege facts which, if true, would entitle him to relief; merely stating unsupported conclusions will not suffice." *Woods v. United States*, 567 F.2d 861, 863 (8th Cir. 1978) (per curiam).

In *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007), the Eighth Circuit Court of Appeals held that a § 2255 petitioner was entitled to an evidentiary hearing on his claim that his attorney failed to file an appeal when directed to do so on his behalf. There was "no evidence in the record to contradict Watson's assertion that he requested an appeal." *Id.* "Although the district court was not required to credit [petitioner's] assertion, it was required to hold a hearing before making factual determinations about

22

[petitioner's] credibility." *Id.* (internal citations omitted). But the court has also held that "[a] bare assertion by the petitioner that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000).

The United States contends that the affidavit from Ms. Colbath conclusively shows that Walking Eagle is not entitled to relief and characterizes his claim as a "bare assertion." Docket 44 at 4-5. Walking Eagle argues that he is entitled to an evidentiary hearing because the telephone call in which he alleges he instructed Ms. Colbath to file an appeal occurred outside the record of the court. Docket 46 at 3.

"Whenever the written record is 'inconclusive' on whether a defendant told his attorney to file an appeal an evidentiary hearing should be held." *United States v. Robinson*, 171 Fed. App'x 536, 537 (D. Minn. 2006) (citing *Holloway v. United States*, 960 F.2d 1348, 1357 (8th Cir. 1992) and *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005)). *See also Emery v. United States*, No. 1:11CV00013, 2011 WL 5553776 at * 8 (E.D. Mo. Nov. 15, 2011) ("A hearing is generally required to resolve the factual issue of whether the petitioner in a Section 2255 proceeding had directed his trial counsel to file an appeal."). *But see Rodriguez v. United States*, 964 F.2d 840, 840-42 (8th Cir.1992) (per curiam) (affirming the denial of a section 2255 motion without

23

an evidentiary hearing because the bare assertion that an appeal was requested was "plainly inadequate" in the face of an affidavit by the defendant's attorney, which was corroborated by a letter, denying that the defendant asked the attorney to file an appeal); *Sanguino v. United States,* No. 07-4057, 2009 WL 2922038 at *6 (N.D. Iowa Sept. 8, 2009) (dismissing claim without an evidentiary hearing because petitioner "offer[ed] no evidence to support her claim other than her self-serving testimony" and the court found that the statement of her attorney was "more credible"). Because the telephone call in which Walking Eagle asserts he told his attorney to file an appeal is outside the written record, Walking Eagle is entitled to an evidentiary hearing. Therefore, it is

ORDERED that Walking Eagle's objections (Docket 43) and the United States' objections (Docket 44) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 40) is adopted as amended by this order, and the United States' motion to dismiss (Docket 29) is granted in part and denied in part.

IT IS FURTHER ORDERED that this matter is referred to Magistrate Judge Veronica Duffy for an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Magistrate Judge Duffy is directed to

24

appoint counsel to represent Walking Eagle at the hearing. Magistrate Judge Duffy will also address the discovery issues raised in Docket 50.

    Dated June 18, 2012.

                BY THE COURT:


                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                CHIEF JUDGE