UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN WALKING EAGLE, | ) | CIV. 11-5016-KES |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## INTRODUCTION

This matter is before the court on petitioner Kevin Walking Eagle's
motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C.
§ 2255.  A preliminary ruling by the district court dismissed all the claims
asserted by Mr. Walking Eagle except one.  The remaining claim is that
Mr. Walking Eagle's counsel at the time of his sentencing was ineffective under
the Sixth Amendment to the United States Constitution for failing to file an
appeal on behalf of Mr. Walking Eagle.  The district court, the Honorable Karen
E. Schreier, Chief Judge, referred this issue to this magistrate judge for the
holding of an evidentiary hearing and a recommended disposition pursuant to
28 U.S.C. § 636(b)(1)(B).

## FACTS

Counsel was appointed to represent Mr. Walking Eagle in advance of the
evidentiary hearing in this matter.  That hearing was held on July 25, 2012.

Present at the hearing was Mr. Walking Eagle's habeas counsel, Ms. Sarah Baron Houy.  Mr. Walking Eagle appeared by video from FCI Elkton in Ohio, where he is presently incarcerated.  The government was represented by its Assistant United States Attorney Sarah Collins.

A prior report and recommendation was issued by this magistrate judge regarding the many issues originally raised by Mr. Walking Eagle.  The recitation of facts in that prior opinion is incorporated herein by reference.  The following additional facts are based on the testimony held at the July 25, 2012, hearing.

Only two witnesses testified at the hearing:  Mr. Walking Eagle and his trial counsel at sentencing, Monica Colbath.  Because the testimony of each witness differed significantly, the court sets forth both versions of the facts that are pertinent to the pending issue.

Attorney Monica Colbath was appointed to represent Mr. Walking Eagle at Mr. Walking Eagle's request after irreconcilable differences developed between Mr. Walking Eagle and his prior trial counsel, Mr. Terry Pechota.  At the juncture where Ms. Colbath took over Mr. Walking Eagle's representation, he had entered a plea of guilty to the charge of operating a continuing criminal enterprise under 21 U.S.C. §§ 848(a) and (c).  That charge subjected Mr. Walking Eagle to a mandatory minimum sentence of 240 months (twenty years) imprisonment.

2

Upon being appointed, Ms. Colbath reviewed the entire file with
Mr. Walking Eagle.  One of the motions that Mr. Walking Eagle's prior lawyer,
Mr. Pechota, had filed was a motion to dismiss the charges based on the
Ft. Laramie Treaty of 1868.  Mr. Pechota alleged that, under the treaty, the
federal government did not have jurisdiction over criminal acts committed by
Indians on Indian Reservations.  That motion was rendered moot by
Mr. Walking Eagle's plea.  The district court never ruled on it.

When Ms. Colbath took over, one of the issues that Mr. Walking Eagle
was interested in was whether he had grounds for withdrawing his plea of
guilty and what the consequences of withdrawing that plea would be.
Ms. Colbath discussed this issue with Mr. Walking Eagle as well as the
jurisdictional issue based on the 1868 treaty.  Mr. Walking Eagle eventually
decided not to withdraw his plea and to go forward with sentencing.  At
sentencing, he was given a term of incarceration of 240 months, the minimum
sentence allowable.  The district court did not depart upward from the United
States Sentencing Guidelines sentencing range.

At the sentencing hearing, the district court advised Mr. Walking Eagle
that under his plea agreement, he waived the right to appeal all issues except
any upward departure under the United States Sentencing Guidelines and any
jurisdictional issue.  The court further advised Mr. Walking Eagle that if he
wanted to appeal, he must file a notice of appeal with the clerk's office within

14 days of the sentencing.  The court further advised Mr. Walking Eagle that if Ms. Colbath could not prepare his notice of appeal, Mr. Walking Eagle could contact the clerk's office and they would prepare and file a notice of appeal on his behalf.  Mr. Walking Eagle never contacted the clerk's office to ask them to file a notice of appeal on his behalf.

After the sentencing later that same day, Mr. Walking Eagle alleges that he had a telephone conversation with Ms. Colbath.  In that conversation, Mr. Walking Eagle alleges that he told Ms. Colbath, "I want to appeal.  Is there anything to appeal?"  Mr. Walking Eagle alleges that Ms. Colbath responded by telling him that there were no meritorious issues to appeal.  Notably, Mr. Walking Eagle never asserts that he insisted on appealing despite this information from Ms. Colbath.

Two days after sentencing, Ms. Colbath made an in-person visit to Mr. Walking Eagle at the jail in order to bring him a copy of his judgment and commitment.  At this meeting, Mr. Walking Eagle testified that Ms. Colbath asked him if he wanted to appeal the sentence.  She told him that the jurisdictional issue based on the 1868 treaty had been rejected by the Eighth Circuit.  Again, Mr. Walking Eagle did not assert that, despite this information from Ms. Colbath, that he unequivocally asked her to file an appeal for him.

Four days after his sentencing, Mr. Walking Eagle made another telephone call to Ms. Colbath at approximately 8:00 in the evening.

4

Mr. Walking Eagle could not recall if he spoke to Ms. Colbath, or if he left a voice mail message.  In this phone contact, Mr. Walking Eagle alleges that he raised the issue again of a possible appeal.  He testified that he asked again about an appeal.  He did not testify that he told Ms. Colbath he definitely wanted to appeal regardless of his chances of success.

This phone contact was the last time Mr. Walking Eagle had contact with counsel, in person or over the phone, in the 14 days following his sentencing. He was transported away from the local jail six days after his sentencing. Mr. Walking Eagle testified that later, long after the 14 days had expired, he contacted Ms. Colbath, who told him there were "other avenues" of relief available to him and sent him a § 2255 petition.

Ms. Colbath's testimony differed significantly from Mr. Walking Eagle's. Ms. Colbath is an attorney in good standing in the State of South Dakota since 1994.  She practices exclusively in the area of criminal defense.  She has extensive experience in federal criminal matters.

Ms. Colbath testified that when she took over representing Mr. Walking Eagle from Mr. Pechota, she advised Mr. Walking Eagle about the possibility and the adviseability of withdrawing his plea.  She advised Mr. Walking Eagle about possible appeal issues, both if he withdrew his plea and if he did not. She advised him specifically about the jurisdictional issue based on the 1868

treaty, telling Mr. Walking Eagle that she had researched this issue in prior cases and that the Eighth Circuit had rejected the argument.

Immediately after Mr. Walking Eagle was sentenced, Mr. Walking Eagle and Ms. Colbath conversed.  Mr. Walking Eagle said nothing about appealing. Instead, the issue he was concerned about was arranging a contact visit with his mother before he left South Dakota for prison.

Ms. Colbath had no specific memory of the content of the conversation with Mr. Walking Eagle by telephone later on the day of sentencing, but did recall Mr. Walking Eagle again raising the issue of having a contact visit with his mother.

Two days after sentencing, when Ms. Colbath visited Mr. Walking Eagle in person at the jail, she asked him specifically if he wanted to appeal.  He told her unequivocally, "don't file it."  During this conversation, Ms. Colbath talked to Mr. Walking Eagle about various issues that might be appealed and the chances of success on each issue.  She testified that it is her practice to tell defendants honestly whether an issue is likely to have merit on appeal or not. She testified that it is her practice to always discuss with the defendant whether he or she wants to appeal.  She does not try to talk clients into, or out of, appealing.  She testified that it is her practice to give the client the facts and her opinion about whether an appeal issue has merit or not and to let the client make the decision about whether to appeal.

6

Ms. Colbath testified that Mr. Walking Eagle wrote her numerous letters after the 14-day appeal period had passed.  He never expressed his desire to appeal in any of these letters nor did he ever make inquiry of the status of his appeal request to find out if Ms. Colbath had in fact filed an appeal.

Ms. Colbath testified that she would have appealed if Mr. Walking Eagle had told her he wanted to.  She has done so in many cases in the past, even where she thought the appeal would not be successful.  She testified that filing an appeal is an opportunity to make more money, so there is a built-in incentive for court-appointed counsel to file appeals for their clients.  There is no negative impact for the attorney for filing an appeal requested by a defendant, even if the appeal is sure to fail.

Ms. Colbath did not reduce to writing in either her notes or a letter her conversation with Mr. Walking Eagle about appealing.  She testified that it is not her practice to record this information in writing.  She testified that when a client tells her "don't appeal," she takes them at their word.

## DISCUSSION

Both this magistrate judge and the district court have previously set forth in great detail the law applicable to Mr. Walking Eagle's claim that Ms. Colbath was ineffective under the Sixth Amendment for failing to appeal on his behalf.  <u>See</u> Docket Nos. 40 and 51.  That discussion is incorporated herein by reference.

Turning first to the credibility issue, the court finds that the testimony of Ms. Colbath is credible and Mr. Walking Eagle's testimony is not.  Ms. Colbath is an experienced criminal defense attorney.  She routinely files appeals in cases where defendants ask her to, even if the chances of success in the appeal are not promising.  She would have been paid additional monies if she had undertaken an appeal for Mr. Walking Eagle.  In short, there is no reason for her not to have appealed if Mr. Walking Eagle had asked her to do so.

Her manner and demeanor in testifying support the court's crediting of her version of events.  Furthermore, the fact that Mr. Walking Eagle never mentioned an appeal in any of the letters he sent Ms. Colbath after the appeal period had expired supports Ms. Colbath's version of events, and undermines Mr. Walking Eagle's version.  In addition, the fact that Mr. Walking Eagle never contacted the clerk's office to ask them to help him file a notice of appeal supports Ms. Colbath's version of the facts and undermines Mr. Walking Eagle's.  Accordingly, the court concludes that Mr. Walking Eagle's failure-to-appeal claim for habeas relief must fail because the evidence does not support his allegation that he asked Ms. Colbath to appeal.

However, even if the court were to credit Mr. Walking Eagle's testimony at the hearing, the legal conclusion of this court would be the same: Mr. Walking Eagle cannot prevail on his claim of ineffective assistance of counsel for failure to file an appeal.

8

A defendant wishing to appeal "must have made 'manifest' [his] desire to appeal by expressly instructing [his] attorney to appeal." <u>Nupdal v. United States</u>, 666 F.3d 1074, 1076 (8th Cir. 2012) (quoting <u>Barger v. United States</u>, 204 F.3d 1180, 1182 (8th Cir. 2000)).  Thus, where a petitioner stated in her petition that she wanted to appeal, but testified at the habeas evidentiary hearing that she did not instruct her attorney to appeal, no habeas relief was warranted.  <u>Id.</u>

Also, where a petitioner told her attorney within the appeal period that she wanted to appeal, and the attorney told her he would research potential appeal issues and "be in touch," and the petitioner made no further effort to contact the attorney before the appeal deadline, the petitioner's desire to appeal was not made "manifest" to the attorney and any ineffective assistance of counsel claim based on the failure to appeal is without merit.  <u>Barger</u>, 204 F.3d at 1182.

The facts as related by Mr. Walking Eagle are similar to the facts in <u>Barger</u> in this respect: the question of whether an appeal would be pursued was ambiguous and left without a definitive resolution.  Mr. Walking Eagle said he told Ms. Colbath that he wanted to appeal, and asked whether there were any good issues to raise on appeal.  Thereupon, according to Mr. Walking Eagle, Ms. Colbath told him that there were not any good appeal issues.  According to Mr. Walking Eagle, he said nothing more in the face of

Ms. Colbath's statement.  He did not reiterate a desire to appeal, regardless of whether there were any good issues or not.  This evidence, like the exchange that took place in <u>Barger</u>, does not prove a clear manifestation of a desire to appeal on Mr. Walking Eagle's part to Ms. Colbath.  Accordingly, even under Mr. Walking Eagle's version of the facts, the court would conclude that no habeas relief was warranted.

At the evidentiary hearing in this matter, counsel for Mr. Walking Eagle repeatedly raised the issue of whether Ms. Colbath discussed with Mr. Walking Eagle the advantages and disadvantages of appealing.  An attorney has a duty to consult with her client, and to advise the client of the advantages and disadvantages of appealing.  <u>See</u> <u>Keys v. United States</u>, 545 F.3d 644, 647 (8th Cir. 2008) (citing <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 478 (2000)). Ms. Colbath's testimony is that, prior to the sentencing hearing, she had a detailed discussion with Mr. Walking Eagle about the possibility of appealing, both under the plea agreement and if he backed out of the plea agreement. Mr. Walking Eagle did not dispute this testimony.  Having fulfilled her duty to consult prior to sentencing, Ms. Colbath was not required to revisit in detail this same discussion post-sentencing.  In any event, Mr. Walking Eagle's claim under § 2255 is not that Ms. Colbath failed to consult with him about filing an appeal.  Rather his claim is that she failed to follow his express instruction to

appeal.  This is a different argument than the failure to consult argument and, as the court has already concluded, that claim fails.

## CONCLUSION

Based on the above-cited facts and law, this court recommends that the government's motion to dismiss petitioner Kevin Walking Eagle's remaining claim for habeas relief based on counsel's alleged failure to appeal [Docket No. 29] be granted.  This court recommends dismissing Mr. Walking Eagle's lone remaining claim with prejudice.

## <u>NOTICE TO PARTIES</u>

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require *de novo* review by the district court.  See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

Dated July 26, 2012.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE