UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN WALKING EAGLE, | ) | Civ. 11-5016-KES |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING PETITION |
| | ) | FOR WRIT OF HABEAS CORPUS |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, Kevin Walking Eagle, filed a petition for relief under 28 U.S.C. § 2255 on March 3, 2011. Docket 1. The court referred the petition to United States Magistrate Judge Veronica L. Duffy pursuant to 28 U.S.C. § 636(b)(1)(B) for the purposes of conducting any necessary hearings, including evidentiary hearings, and issuing a report and recommendation for the disposition of Walking Eagle's § 2255 application. Docket 16.

On August 23, 2011, the government filed a motion to dismiss Walking Eagle's habeas application on substantive grounds. Docket 10. After several extensions, Walking Eagle responded in opposition to the motion on December 5, 2011. Docket 39. On January 12, 2012, Magistrate Judge Duffy issued a report recommending the dismissal of all but one of Walking Eagle's claims. Docket 40. On the remaining claim–ineffective assistance of counsel under the Sixth Amendment–Magistrate Judge Duffy recommended that an evidentiary hearing be held to determine whether Walking Eagle's attorney,

Monica Colbath, violated his constitutional rights when she failed to appeal Walking Eagle's sentence. *Id.* Both parties filed objections to the magistrate judge's determinations. Docket 43, 44. On June 18, 2012, the district court adopted Magistrate Judge Duffy's report and recommendation and referred the case back to the magistrate judge for an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Docket 51. The district court also directed the magistrate judge to appoint counsel to represent Walking Eagle at the evidentiary hearing. *Id.*

An evidentiary hearing was held on July 25, 2012, at which both Walking Eagle and attorney Colbath testified. Docket 65. The following day, on July 26, 2012, Magistrate Judge Duffy submitted the Report and Recommendation currently under consideration. Docket 64. In her report, Magistrate Judge Duffy recommended that the government's motion to dismiss Walking Eagle's remaining claim (Docket 29) be granted and Walking Eagle's remaining claim for habeas relief based on counsel's alleged failure to appeal be dismissed. *Id.* On August 13, 2012, Walking Eagle filed timely objections to the Report and Recommendation. Docket 67. For the reasons set forth herein, Magistrate Judge Duffy's Report and Recommendation is adopted.

## DISCUSSION

The court's review of the magistrate judge's decision is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. Pursuant to 28 U.S.C. § 636(b)(1), the court reviews de novo any objections that are timely made and specific. *See* Fed. R. Civ. P. 72(b) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). In the instant case, Walking Eagle objects to Magistrate Judge Duffy's findings that (1) Walking Eagle did not instruct Colbath to file an appeal, (2) Colbath had a "detailed discussion" about an appeal with Walking Eagle before sentencing, and (3) Colbath satisfied the consulting requirement. Docket 67.

The court has reviewed the transcript of the evidentiary hearing that was held on July 25, 2012. Docket 65. Based on the testimony provided therein and the facts recited in Magistrate Judge Duffy's Report and Recommendation, it is evident that Walking Eagle and Colbath are in agreement on the details of Colbath's appointment and the relevant portion of events leading up to Walking Eagle's sentencing hearing. Docket 64, 65. Colbath was appointed to represent Walking Eagle at Walking Eagle's specific request in February 2010. Docket 65 at 19:22–20:3; 32:8–9. In the weeks leading up to Walking Eagle's sentencing hearing, Colbath met with Walking Eagle several times to discuss the history of his case and the details of his plea and upcoming sentencing. *Id.* at 10:3–8;

20:4–7, 19–23; 21:7–9; 32:15–17; 32:20–33:3. Colbath also researched Walking Eagle's questions regarding the possibility of withdrawing his plea, and she provided him with answers that explored the advantages and disadvantages of taking such action. *Id.* at 33:6–13.

On March 1, 2010, the district court sentenced Walking Eagle to the mandatory minimum term of 240 months' imprisonment and five years of supervised release.[1] Case No. CR. 08-50100 Docket 278. At that hearing, Walking Eagle confirmed that he understood the requirements of the appeal process. The judge asked Walking Eagle whether he understood that he had fourteen (14) days within which to appeal his sentence, and Walking Eagle said, "Yes." Docket 65 at 28:20–24. Furthermore, Walking Eagle was advised that in the event he wanted to appeal his sentence and Colbath was unable to assist him, he could contact the clerk of court's office to have them prepare and file a notice of appeal on his behalf. *Id.* at 28:16–20. The district court entered judgment on March 2, 2010 (Case No. CR. 08-50100 Docket 285), and Walking Eagle did not file a notice of appeal.

The events that transpired in the days following Walking Eagle's sentencing hearing are in dispute. According to Walking Eagle, he was unable to consult with Colbath immediately after the sentencing hearing, and so he called

---

[1] Walking Eagle pleaded guilty to participating in a continuing criminal enterprise. Case No. CR. 08-50100 Docket 248.

her later that same evening to determine whether he "had anything to appeal." Docket 65 at 12:4. Walking Eagle alleges that he "basically" told Colbath that he wanted to appeal.[2] *Id.* at 12:12. On March 3, 2010, Colbath visited Walking Eagle at the Pennington County Jail to deliver paperwork and discuss whether Walking Eagle wanted to appeal. *Id.* at 14:15–21, 24–25. Without discussing information related to the advantages and disadvantages of pursuing an appeal, Colbath told Walking Eagle that "the thing[3] you wanted to appeal got rejected in the Eighth Circuit."[4] *Id.* at 15:1–2, 15–18. Assuming all the doors were closed, Walking Eagle ended the conversation.[5] *Id.* at 15:5–11.

---

[2] Walking Eagle asserts that he intended to direct Colbath to file an appeal and "basically" told her, "I want to appeal." Docket 65 at 12:5–6, 11–13. When specifically prompted, Walking Eagle later claims that he had told Colbath, "I want to appeal." *Id.* at 24:17.

[3] Prior to sentencing and during the various meetings between Walking Eagle and Colbath, Walking Eagle had asked about jurisdictional issues and the effect of the 1868 Fort Laramie Treaty. Docket 65 at 34:12–13; 40:23–24.

[4] As Magistrate Judge Duffy pointed out, Walking Eagle does not claim to have unequivocally insisted on an appeal after receiving the information from Colbath that the jurisdictional issue had been previously rejected by the Eighth Circuit. Docket 64 at 4.

[5] Walking Eagle admits that Colbath "did not explain nothing [sic], because [he] left." Docket 65 at 15:11–12; *see also* Docket 65 at 25:18–20. He later states that, after Colbath allegedly told him that the Eighth Circuit had rejected the type of appeal he was contemplating, he walked out of the room. *Id.* at 27:11–16. He did not ask her any further questions because he did not realize he was supposed to. *Id.* at 27:23–25.

Walking Eagle allegedly attempted to contact Colbath by telephone on March 5, 2010, to discuss an appeal, but Walking Eagle does not remember whether he actually talked to Colbath on that occasion. Docket 65 at 13:13–18; 14:1–4. Shortly thereafter, on March 7, 2010, Walking Eagle was transported out of the Pennington County Jail, and he neither contacted nor saw Colbath again before his appeal period expired on March 16, 2010.[6] *Id.* at 16:25–17:5. Walking Eagle admits that Colbath never refused to file an appeal on Walking Eagle's behalf, and that he did not attempt to contact the clerk's office to request that a notice of appeal be prepared and filed on his behalf. *Id.* at 28:25–29:5.

Colbath, on the other hand, alleges that Walking Eagle never explicitly indicated a desire to appeal his sentence. In fact, Colbath claims that immediately after the sentencing hearing concluded, Walking Eagle did not express an interest in appealing the sentence, but rather was concerned about setting up a contact visit with his mother. Docket 65 at 35:6–17. When Walking Eagle contacted Colbath later that evening, he remained primarily concerned with setting up a contact visit with his family. *Id.* at 35:18–36:1. Colbath does

---

[6] Walking Eagle wrote letters to Colbath after his appeal deadline passed. Docket 65 at 18:1–12. In those letters, however, Walking Eagle never referred to the prospect of an appeal. *Id.* Rather, he requested help with unrelated issues such as child support, and at one point, Colbath informed Walking Eagle of the availability of other avenues of relief. *Id.* at 18:7–12; 38:15–16. In fact, Colbath sent Walking Eagle information about filing for habeas relief under 28 U.S.C. § 2255, the very avenue he is now using to allege that Colbath failed to provide him with sufficient legal assistance. *Id.* at 18:12; 38:14–15.

not recall Walking Eagle saying anything about an appeal in their phone conversation that evening. *Id.* at 36:5. Had Walking Eagle told Colbath that he wanted to appeal, Colbath asserts that she would have filed an appeal because she was obligated to protect Walking Eagle's interests. *Id.* at 36:6–7, 11–16.

When Colbath visited Walking Eagle on March 3, 2010, she discussed the conditions included in Walking Eagle's judgment of conviction and asked him whether he wanted to pursue an appeal. Docket 65 at 36:24–37:3. In response, Walking Eagle allegedly stated, "Don't file it."[7] *Id.* at 37:4–6. During that same meeting, Colbath addressed Walking Eagle's "chances of winning" and "what the research showed." *Id.* at 37:7–12. Moreover, she "may have said something about the Eighth Circuit [having] looked at this [type of appeal] and reject[ing] it before." *Id.* at 37:19–20. Colbath asserts that she left "the decision . . . up to [Walking Eagle]," and never refused to file an appeal.[8] *Id.* at 37:12; 38:4–6; 42:24–43:3; 43:9–11. Finally, Colbath points out that in the various letters Walking Eagle

---

[7] Colbath later indicates that when clients say they don't want to pursue an appeal, she does not take any further action on the matter. Docket 65 at 46:13–16. "If that's what they say, then that's what I do or don't." *Id.* at 46:16–17.

[8] Colbath also points out that it would have been financially advantageous for her to file an appeal on Walking Eagle's behalf; that while she had something to gain by filing an appeal, she certainly had nothing to lose. Docket 65 at 38:13–25. Colbath had advised clients in Walking Eagle's situation before, and when such clients expressed a desire to file an appeal, Colbath filed an appeal. *Id.* at 45: 21–22.

7

sent to her after his appeal deadline had passed, he never once mentioned having wanted to file an appeal. *Id.* at 39:3–6.

It is with these facts that the court considers Walking Eagle's objections to Magistrate Judge Duffy's Report and Recommendation. Walking Eagle first objects to the magistrate judge's finding that Walking Eagle did not instruct Colbath to file an appeal. Docket 67 at 5. Walking Eagle asserts that, because he specifically recalled making a request for an appeal, and because Colbath could not recall whether a specific request was made, Walking Eagle's testimony should be given credence. *Id.* Accordingly, Walking Eagle asserts that the court should reject the magistrate judge's finding and conclude that Colbath's failure to file an appeal on Walking Eagle's behalf amounted to ineffective assistance of counsel. *Id.* at 6.

Typically, an ineffective assistance of counsel claim involves a two-part inquiry. First, a petitioner must show that counsel's performance was deficient; "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, a petitioner "must show that the deficient performance prejudiced the defense." *Id.* In the context of an attorney's alleged failure to file a notice of appeal, however, prejudice need not be shown. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). "[A]n attorney's failure to file a notice of appeal after being instructed to do so by his client

constitutes ineffective assistance entitling petitioner to section 2255 relief." *Id.* Consequently, for an ineffective assistance of counsel claim to succeed in the failure-to-appeal context, Walking Eagle must show that he instructed Colbath to file an appeal. *Id.* "A bare assertion by the petitioner that [he or] she made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id.*

In the instant case, Walking Eagle and Colbath gave conflicting testimony at the evidentiary hearing–Walking Eagle claims that he specifically requested, in a phone conversation, that Colbath file an appeal, but Colbath does not recall having had such an exchange over the phone. Docket 65 at 24:15–17; 35:22–24. To resolve the issue, Magistrate Judge Duffy assessed the credibility of each party and found that the testimony of Colbath was more credible than Walking Eagle's testimony. Docket 64 at 8. In arriving at such a determination, the magistrate judge cited Colbath's experience as a criminal defense attorney, her familiarity with the appeals process, and the fact that Colbath had no reason not to file an appeal considering it would have been to her financial advantage. *Id.* The magistrate judge also concluded that Colbath's testimony was bolstered by "the fact that Mr. Walking Eagle never mentioned an appeal in any of the letters he sent Ms. Colbath after the appeal period had expired." *Id.* The court finds these facts in support of Colbath's credibility similarly compelling.

Also compelling is the undisputed evidence that Colbath never explicitly refused to file an appeal on Walking Eagle's behalf, nor did Walking Eagle attempt to contact Colbath in the ten days leading up to his appeal deadline to discuss an appeal. Docket 65 at 28:25–29:2; 16:25–17:2; *see also Barger*, 204 F.3d at 1182 (affirming the district court's adoption of a report and recommendation, which found that "any reasonable person concerned with losing [his or] her appeal" would have made "an effort to follow-up with [his or] her attorney before the time limit expired"). Furthermore, Walking Eagle readily admits that he never attempted to contact the clerk's office for assistance with preparing and filing a notice of appeal (Docket 65 at 29:3–5), which was an available measure about which he had full knowledge (Docket 65 at 28:13–24). Based on these facts, the court concludes that Walking Eagle's bare assertion that he requested an appeal is not sufficient to support a grant of relief. Accordingly, the court adopts the magistrate judge's finding that Walking Eagle did not instruct Colbath to file a notice of appeal.

Walking Eagle's second and third objections to the Report and Recommendation can be taken together. Walking Eagle objects to the magistrate judge's finding that Colbath had a detailed discussion with Walking Eagle prior to his sentencing hearing and thus fulfilled her duty to consult Walking Eagle about an appeal. Docket 67 at 7–9. Walking Eagle asserts that Colbath failed to sufficiently advise Walking Eagle about the advantages and disadvantages of

taking an appeal, and thus she violated the constitutionally imposed duty to consult. *Id.* at 9.

The Constitution does not impose a per se duty to consult. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). As the United States Supreme Court has made clear: "imposing 'specific guidelines' on counsel is 'not appropriate.' " *Id.* at 479 (quoting *Strickland*, 466 U.S. at 688). Instead, the requirement imposed by the Sixth Amendment is that "counsel make objectively reasonable choices." *Id.* The Supreme Court applied this standard to the context of advising on an appeal and held that

> counsel has a constitutionally imposed duty to consult with the [client] about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* To demonstrate situations in which the duty to consult would not apply, the Supreme Court offered the following illustrations:

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable" as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some

>cases, counsel might then reasonably decide that he need not repeat that information.

*Id.* at 479–80 (internal citations omitted).

In the instant case, Colbath did not have an affirmative duty to consult–not only did this court provide clear and informative instructions to Walking Eagle about his appeal rights, but the court cannot conclude that Colbath was "professionally unreasonable" in not pursuing an appeal given the circumstances. And even if Colbath did have an affirmative duty to consult, she fulfilled that duty. It is undisputed that, prior to Walking Eagle's sentencing hearing, Colbath discussed with Walking Eagle the advantages and disadvantages of filing an appeal. Docket 65 at 17:18–20; 36:24–37:3. Moreover, it is undisputed that Colbath visited Walking Eagle two days after his sentencing hearing to deliver paperwork and speak with him about filing an appeal. *Id.* at 14:22–24; 36:24–37:3. During this time, Walking Eagle had the opportunity to ask questions of Colbath, but instead, he cut the conversation short and walked out of the meeting. *Id.* at 27:4–25.

Therefore, whether or not Colbath had an affirmative duty to consult, the court finds that Colbath made objectively reasonable choices in discussing with Walking Eagle the ramifications of an appeal prior to the sentencing hearing and in making herself available after the sentencing hearing to answer any of Walking Eagle's questions regarding the conditions of his judgment and the

possibility of an appeal. Accordingly, the court adopts the magistrate judge's finding that Colbath fulfilled her duty to consult.

Therefore, it is

ORDERED that Magistrate Judge Duffy's Report and Recommendation (Docket 64) is adopted. Respondent's motion is to dismiss (Docket 29) is therefore granted, and Walking Eagle's remaining claim for habeas relief is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is issued on Walking Eagle's ineffective assistance of counsel issue for failure to file a notice of appeal only.

Dated October 23, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

13